A

# IN THE UNITED STATES DISTRICT COURT
# FOR WESTERN DISTRICT OF TEXAS

FILED 2026 OCT 15 AM 10:36
CLERK, US DISTRICT COURT WESTERN DISTRICT OF TEXAS
BY CR

| | |
|---|---|
| **VAN THI HANH TRINH,**<br>Plaintiff<br>VS.<br>**JENNIFER BRADFORD; VICKY BUSH; DOWN & STANFORD, FRANCES OWINGS, PC; LEEANNA GAINER MASK;** ACE AMERICAN INSURANCE COMPANY ("ACE"); **MEDICALL,** OFFICE OF INJURED EMPLOYEE COUNSEL (OIEC) **; TEXAS DEPARTMENT OF INSURANCE-DIVISION OF WORKER'S COMPENSATION (TDI-DWC) **<br>Defendants | **CIVIL ACTION NO.:**<br>1:26CV02914 DAE<br>*{ Transferred From Southern District }*<br>SIPHON: **DWC CLAIM NO.: 25169058** [1]<br>HOAX: DWC CLAIM: DWC No. 25183607<br>**CARRIER NO.: 1E01E017457802** |

---

# PLAINTIFF'S VERIFIED EMERGENCY COMPLAINT

## IN SUPPORT OF EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER & MANDATORY PRELIMINARY INJUNCTION REINSTATING A STOLEN "INDEMNITY" WORKERS' COMPENSATION BENEFIT UNDER DWC NO. 25169058, SWORN AFFIDAVITT & REQUEST TO UNSEAL PETITION

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff, Van Thi-Hanh Trinh ("Plaintiff"), appearing *Pro Se*, respectfully submits this Verified Complaint to support her concurrent **Emergency *EX PARTE* Motion** for a Temporary Restraining Order (TRO) and Mandatory Preliminary Injunction, pursuant to **Federal Rule of Civil Procedure 65(b)** and the inherent equitable powers of this Court. Plaintiff urgently requests that this Court issue an immediate order to reinstate Plaintiff's lawful Third-Party causational (§417.001) and occupational (§401.011) **"INDEMNITY"** Workers' Compensation benefits—**predicated on a ~ $110,000.00 annual salary baseline**, to its full lawful scope under the original, legitimate claim **DWC #** 25169058 (created in December 2024).

As established in the verified records of more than 27 exhibits, these baseline financial and medical benefits have been **unlawfully stripped away for over seventeen (17) months by Defendant Jennifer Bradford, Vicky Bush** and their co-conspirators, in compounding with TDI-DWC, OIEC and ACE American Insurance Company insiders. Defendants engineered a fraudulent, parallel, a denied claim under a **FRAUD** DWC No. 25183607, by exploiting systemic architectural flaws within the state's electronic system known as "***TXCOMP***", → *DEFENDANTS CREATED TWO (2) DWC CLAIMS FOR A SINGLE INJURED (at least ~ 35 days apart)*. Through **DEEP INSURANCE FRAUD & SYNTHETIC IDENTITY** manipulation (utilizing a **FRAUD Social Security Number** & variations of employer and carrier names), Defendants established a **dual-claim architecture** to enforce total financial & medical deprivation against Plaintiff.

Plaintiff further moves this Court for an *EMERGENCY MANDATORY ORDER* compelling the Defendants to immediately reinstate all weekly cash indemnity benefits retroactive to their inception, authorize and deliver Plaintiff's prescribed NuMotion custom wheelchair, & lift all administrative blockades targeting her primary care, diagnostic laboratory testing, and specialist cardiac care. **Absent immediate judicial intervention, this artificial financial and medical blockade will continue to act as a LETHAL MECHANISM, driving Plaintiff's advanced-stage heart failure with Left Atrial Enlargement to irreversible biological collapse—started to damage other organs.** In support thereof, Plaintiff shows:

| | | |
|---|---|---|
| **A.** | **TABLE OF CONTENT** | **2** |
| **B.** | **INTRODUCTION & BACKGROUND** | **4** |
| I. | SUBSTANTIAL THREAT OF IMMINENT IRREPARABLE INJURY TO SURVIVING ANATOMY (CRITICAL MEDICAL PRIORITY) | 5 |
| II. | SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS | 6 |
| III. | THE THREATENED INJURY OUTWEIGHS ANY POTENTIAL HARM TO DEFENDANTS | 7 |
| IV. | THE INJUNCTION SERVES THE PUBLIC INTEREST | 7 |
| **C.** | **JURISDICTION AND VENUE** | **8** |
| **D.** | **THE PARTIES** | **10** |
| **E.** | **STATEMENT OF FACTS** | **16** |
| IX. | THE STRUCTURAL ROOTS OF THE CLAIM AND ADMINISTRATIVE FAILURE/ THE CORPORATE IDENTITY FRAUD SCHEME | 16 |
| X. | THE ANATOMY OF THE *TXCOMP* DATABASE EXPLOIT: DEEP INSURANCE FRAUD VIA SYNTHETIC IDENTITY SPLITTING → SINGLE CATASTROPHIC INJURY ->> TWO (2) CLAIM DWC NO. CREATED FOR A SINGLE INJURE (DWC NO. 25169058 AND DWC NO. 25183607 ) | 19 |
| | → <u>Claim A</u> (DWC NO. 25169058): Original—created ~ middle of December 2024, LIVE, APPROVED, ACTIVE INDEMNITY (HIDDEN) – ***"Secret Financial Engine"*** | 19 |
| | → <u>Claim B</u> (DWC NO. 25183607): Created about 35 days later, SYSTEMATICALLY DENIED, ***"External Consumer Deflector"***. | 20 |
| XI. | "TC99M SESTAMIBI" NUCLEAR STRESS TEST VS. CLINICALLY & LEGALLY "<u>ALARMING</u>" [1] / EXTREME MEDICAL WILLFUL ENDANGERMENT DURING HIGH-RISK CARDIAC TESTING, FALSIFICATION OF RECORDS & MEDICAL IDENTITY THEFT TO CONCEALING ILLICIT INDEMNITY WORKERS' COMPENSATION BENEFITS | 21 |
| XII. | THE RESULTING LIFE-THREATENING MEDICAL AND MOBILITY BLOCKADE & IMMINENT FORCLOSURE ULTIMATUM | 26 |
| | (A) Resulting Life-Threatening Medical And Mobility Blockade | 26 |
| | (B) The Imminent Foreclosure Ultimatum And Manufactured Default | 27 |
| XIII. | EXHAUSTION OF REMEDIES IS EXCUSED DUE TO SYSTEMIC ADMINISTRATIVE FUTILITY AND DELAY | 28 |
| | → Total Failure of the State Administrative Grid | 28 |
| | → Regulatory Abandonment and Misdirection / Structural Futility | 29 |
| | → **Spoliation of the administrative record** | 30 |
| | REGULATORY INACTION AS THE DIRECT CATALYST FOR ENTERPRISE EXPANSION | 30 |
| | → **The Weaponization of Administrative Impunity** | 30 |
| | → The Transition to Automated Financial Warfare & Criminal Enterprise and Civil RICO | |
| | → Systemic administrative collusion and futility | |


[1] **CRITICAL POINT:** the administrative manipulation as both an independent act of **gross negligence / willful endangerment** and as a overt act in furtherance of the broader **civil conspiracy and fraud** designed to deny Plaintiff medical care. A Nuclear Stress Test involving **Cardiolite (Technetium Tc99m Sestamibi)** carries inherent cardiac risks, as it intentionally stresses the heart to detect blood flow issues. If a patient experiences a severe adverse reaction, myocardial infarction (heart attack), or cardiac arrest during the test, having a **fraudulent emergency contact** completely severs the provider's ability to obtain accurate medical history from family or secure immediate, authorized consent. By inserting a perpetrator's number, the clinic created a life-threatening barrier to emergency communication. In legal terms, doing so with knowledge of the test's risks demonstrates a reckless disregard for human life.

➔ Administrative Futility and Exhaustion Excused 31

➔ Fraudulent Concealment and Tolling:

➔ Judicial and Administrative Indifference

➔ **The Legal Threshold for Bypassing the State System** 32

XIV. THE UNASSAILABLE TIMELINE CONTRADICTION / EVIDENTIARY TIMELINE AND LEGAL CONCLUSIONS 32

➔ Unassailable Evidence Of Parallel Grid Architecture And Wire Fraud 32

➔ **DATA MATRIX EVIDENCE SASTISFIES FACTOR # 1** 35

**XV. THE "FACT TRAP": DEFENDANTS' IRREFUTABLE ADMISSION BY CONDUCT** 36

➔ The Biological Reality: Intentional Attrition Resulting In Physical Collapse 38

XVI. THE ANATOMY OF THE "MENTAL ILLNESS" AMBUSH FROM MEDICALL 39

XVII. CONCLUSION: TIMELINE EVIDENCE SATISFIES A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS 40

XVIII. CATASTROPHIC, IRREVERSIBLE MEDICAL ATTRITION 42

➔ Irreparable physical attrition and constitutional deprivation 42

➔ Serie of Diagnosed codes: Z79899 ( other longer term (current) drug therapy"), Code R79.82 (Elevated C-Reactive Protein [CRP], R74.9 (Abnormal Serum Enzyme Level, R79.89 (Other Specified Abnormal Findings of Blood Chemistry), etc.. 43

**F. CAUSES OF ACTION** 44

I. COUNT # 1: Violation Of The Civil Racketeer Influenced And Corrupt Organizations Act (RICO) → 18 U.S.C. §§ 1961–1964 — Conduct Of An Enterprise Through A Pattern Of Racketeering Activity 44

II. COUNT # 2: Reckless Disregard Causing Serious Bodily Injury - 18 U.S.C. § 1347 47

III. COUNT # 3: Civil Liability For Rights Violation And Mailing Embargo - Violation Of The Texas Theft Liability Act (TTLA) 48

IV. COUNT # 4: Civil Violation Of The Computer Fraud And Abuse Act Civil Violation Of The Computer Fraud And Abuse Act (CFAA) → 18 U.S.C. § 1030(A)(4) And § 1030(G) 48

V. COUNT # 5: Fraud Involving Identification Means / Medical Record Spoofing 49

VI. COUNT # 6: Deprivation Of Rights Under Color Of Law (18 U.S.C. § 242) 50

VII. COUNT # 7: Common Law Fraud & Synthetic Identity Deception → Texas Common Law 51

VIII. COUNT # 8 : Violation Of Texas Labor Code § 408.021 52

IX. COUNT # 9 : Healthcare Fraud (18 U.S.C. § 1347): Using Your Advanced Heart Failure And Uterine Hemorrhaging To Generate Medical Billing Profiles 52

X. COUNT # 10: Common Law Civil Conspiracy And Intentional Infliction Of Emotional Distress 52

**G. EXEMPTION FROM EXHAUSTION OF ADMINISTRATIVE REMEDIES VIA THE FUTILITY DOCTRINE** 53

**H. INCORPORATION OF EMERGENCY EX PARTE MOTION FOR TRO & APPLICATION OF THE ADMINISTRATIVE FUTILITY DOCTRINE** 54

**I. REQUEST TO UNSEAL PETITION AND FILINGS** 55

**J. CONCLUSION & PRAYER FOR RELIEF** 58

**K. SWORN AFFIDAVIT & UNDER PANALTY OF PERJURY** 59

## C. INTRODUCTION & BACKGROUND

1. For over 14 months, Plaintiff has been diligently worked with TDI-DWC & OIEC on disputing Defendant's Jennifer Bradford's fraudulent denial of Plaintiff lawful Workers' Compensation benefit, including exposing to the TDI-DWC's Appeals Panels Judges the criminology/ unlawful acts of the Defendant, procedural violations, regulatory noncompliance, TDI-DWC's Administrative Law Judge's misapplication of laws issues. However, Appeal Panels Judges ignored Plaintiff's request, and instructed to file a lawsuit. In addition, through February & March 2026's "smoking guns" discoveries from Baylor Scott & White, LabCorp, NuMotino Wheelchair provider, Medicall – a multi-billion dollar, a 500 Fortune Company, Plaintiff learned that her original claim, **DWC No.: 25169058 created in December 2024 with assigned Carrier Claim No.: 1E01E017457802** was registered on the backend as an active, a completely valid, approved, fully mature, and functional policy under an active "***INDEMNITY***" insurance type (exhibit # 27) classification. The discovered **data matrix proves that this policy is fully mature and functional on the back-end infrastructure.** Therefore, Plaintiff urgently requests that this Court issue an immediate order to reinstate Plaintiff's lawful occupational (§401.011) (**exhibit # 2**), and a Third-Party causational (§417.001) (**exhibit # 1**) "**INDEMNITY**" Workers' Compensation benefits—**predicated on a ~ $110,000.00 annual salary baseline**, to its full lawful scope under the original, legitimate and valid claim that's created in December 2024, **DWC No. 25169058** (**exhibit # 3, 4**).

2. As established in the verified records of over 27 exhibits, these baseline financial and medical benefits have been **unlawfully stripped away for over seventeen (17) months by Defendants: Jennifer Bradford, Vicky Bush** and their co-conspirators, in compounding with ACE American Insurance Company, and TDI-DWC, OIEC and insiders.

   (i) Defendants engineered a fraudulent, parallel, a denied claim under a <u>**FRAUD**</u> DWC No. 25183607 (**exhibit # 6**), by exploiting <u>**systemic architectural flaws**</u> within the state's electronic system, known as "***TXCOMP***", by creating *TWO (2) DWC CLAIMS FOR A SINGLE INJURED*. Through **DEEP INSURANCE FRAUD & SYNTHETIC IDENTITY** manipulation → utilizing: **(a)** a <u>**FRAUD**</u> **Social Security Number, which was fraudulently created for Plaintiff** without Plaintiff's **consent in November 2023 (exhibit # 5), & (b)** variations of employer and carrier names, → Defendants established a **dual-claim architecture** to enforce total financial & medical deprivation against Plaintiff.

   (ii) Their illegal acts outrageously and brutally conducted regardless an AVP Claims Compliance Specialist from ***CHUBB.COM*** (ACE American Insurance Company), Ms. Marillee Brabson established a **Carrier Claim No.: 1E01E017457802** for Plaintiff, as well as introduced "ESIS" as their "*Claim Representative*" from "*ESIS DALLAS WC CLAIM OFFICE – 135*", will contact Plaintiff. Ms. Marillee Brabson also closed her email message with a statement, "*... Again, I am sorry to hear about the injury but ESIS will be there to help with the recovery...*" (**exihibit # 4, page # 3**). Subsequently, on around January 29, 2025, Plaintiff also received two (2) crucial items below, in which <u>**signified that Plaintiff was entitled for the Workers' Compensation Benefits, on both wage income and medical**</u>, these letters were both dated on **January 27, 2025.**

      - <u>LETTER # 1</u>: Introduction Letter from carrier, EWC0002, which explained Texas Rule 124.7 of the Texas Workers' Compensation Act, addressed the "compensation benefits begin to accrue at the eighth day of disability..."; as well as instructed Plaintiff to have medical providers to submit any correspondence / bills for Plaintiff's injure to the address: "ESIS Inc., located at P.O. Box 6563, Scranton, PA 18505-6563"... (**exhibit # 4, pages # 4 – 7**)

      - <u>LETTER # 2:</u> The insurance carrier's claim administrators ESIS's Pharmacy Impact Team also sent Plaintiff a **Workers' Compensation Prescription Drug Card,** operated by OPTUM (**exhibit # 4, page # 8**).

(iii) Especially, these letters was issued BEFORE Defendant Jennifer Bradford conducted an investigation interview with Plaintiff on January 29, 2025 at an approximate ~2:00PM. Whereas Plaintiff subsequently sent to Defendant Bradford the fourteen (14) pages of Plaintiff's urgent request for cardiologist pending heart assessment tests, that needed the medical benefits to pay in advance per required by the cardiologist (**exhibit #** 7 ), however without receiving Plaintiff's compensable document, Defendant J. Bradford denied Plaintiff's claim on January 30, 2025 (**exhibit #** 9 ).

(iv) Further details of Defendants' sub-sequential illegal acts and outrageous conducts have been documented within a 68-pages of appeal motion, including criminology matters of the Defendant Jennifer Bradford and her co-conspirators (**exhibit #** 24 ).

3. Plaintiff further moves this Court for an ***EMERGENCY EX-PARTE ORDER AND MANDATORY ORDER*** compelling the Defendants to immediately reinstate all weekly cash indemnity benefits retroactive to their inception, authorize and deliver Plaintiff's prescribed NuMotion custom wheelchair, & lift all administrative blockades targeting her primary care, diagnostic laboratory testing, and specialist cardiac care. **Absent immediate judicial intervention, this artificial financial and medical blockade will continue to act as a LETHAL MECHANISM, driving Plaintiff's advanced-stage heart failure to irreversible biological collapse—started to damage other organs.**

4. To assist the Court in navigating the extensive 59 page record herein, Plaintiff submits this concise opening summary demonstrating that the urgent circumstances of this case satisfy the rigid requirements for an Emergency Temporary Restraining Order, under Federal Rule of Civil Procedure 65(b):

## I. SUBSTANTIAL THREAT OF IMMINENT IRREPARABLE INJURY TO SURVIVING ANATOMY (CRITICAL MEDICAL PRIORITY)

Absent immediate *ex parte* equitable intervention, Plaintiff faces catastrophic, life-threatening physical attrition and total destitution before a standard evidentiary hearing can be held:

5. **Irreversible Cardiovascular Degradation:** Plaintiff suffers from documented advanced heart failure, apical/anterior perfusion defects, bilateral carotid thickening, and Brady-Tachycardia Syndrome, etc. in Q1 of 2025 (exhibit #1), aggravated to isolation of systolic and diastolic, multiple falls, concussion, left atrial Enlargement, etc..

6. **The Mobility Blockade:** Because Defendants: Jennifer Bradford, Vicky Bush and her co-conspirators have corruptly routed Plaintiff's administrative medical coverage to a pre-denied track after it's approved (Fraud DWC Claim No. 25183607), Plaintiff's prescribed custom wheelchair has been withheld. This forces a

permanently disabled worker to crawl and use crutches, causing continuous cardiovascular volume and pressure overload that mechanically drives progressive **Left Atrial Enlargement (LAE)** and active myocardial tissue destruction (**exhibit # 19**) become worsen.

7. **Imminent Environmental and Residential Collapse:** Compounding this physical frailty, Plaintiff has been reduced to absolute destitution, have been on & off faced with lacking basic utility necessities (water/electricity arrearages) and facing a manufactured foreclosure deadline targeting her primary residence after **June 14, 2026.** (chase's working on foreclosure option).

## II. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The Plaintiff establishes a clear right to relief through unassailable documentary contradictions and admissions by conduct:

8. **The Baylor Scott & White Hospital "face-sheet" Ledger:** Certified hospital enterprise accounting ledgers pulled in March 13 2026 verify that behind the public-facing denials, Plaintiff's underwriting coverage remains completely **LIVE, OPEN, and ACTIVE** under a funded "**INDEMNITY**" **Workers' Compensation** plan tracking her true identity and subscriber profile (**exhibit # 27**), as a "Primary Insurance Coverage" and a plan name: "Workers' Comp Generic", etc.

9. **The Statutory Waiver Rule:** On March 2, 2026, Defendant ESIS expended substantial corporate capital to retain a multi-billion-dollar review engine (**MediCall**) to perform a formal statutory Utilization Review over a minor $250.00 therapy code. Under **Texas Insurance Code § 4201.002(14)**, utilization reviews cannot legally be performed on denied or non-compensable files. This action constitutes a binding admission by conduct that the baseline policy is live, (exhibit # 15).

10. **Complete Administrative Exhaustion:** The Plaintiff has exhausted every local and state administrative remedy, culminating in a rubber-stamped procedural denial by the TDI-DWC Appeals Panel. Following comprehensive fraud filings, the **United States Attorney's Office** issued formal written correspondence directing the Plaintiff to the State Authorities, confirming that local administrative channels are entirely corrupted and clearing the path for federal equity jurisdiction under *McCarthy v. Madigan*, as a result, F.B.I. is a Defendant on Plaintiff's R.I.C.O/FTCA... case, 25-20505 (see RoadMap Interconnected Litigations), so do there's conflict of interest with A.P.S..

11. Plaintiff holds an absolute, lifetime property interest and statutory entitlement to all reasonably required medical equipment under **Texas Labor Code § 408.021**. The underlying fraud is structurally contradicted in the record and consists of a multi-sector racketeering enterprise wherein Defendants:

- Utilized unauthorized communications-routing mechanisms and a parallel data-split architecture to suppress medical text-strings and divert Plaintiff's ~$110,000.00 baseline assets;
- Illicitly misclassified Plaintiff's claim under "not report to supervisor within 30 days, not report to the division within a year, not compensable.."

to denied the claim, prevent legitimate benefit distribution.

- Deployed "*shadow*" organization of the carrier under the name of "*ACE American Insurance Co.*", and a "*shadow*" undetected Third Party Claim Administrator, "*ESIS INC.*", in compounding with the legal representation of Burn Anderson Jury & Brenner's attorneys: Robert Graves and Defendant LeeAnne G. Mask, as well as OIEC, and TDI-DWC.

## ~~III. THE THREATENED INJURY OUTWEIGHS ANY POTENTIAL HARM TO DEFENDANTS~~ V

12. The balance of hardships tips entirely in Plaintiff's favor. The requested emergency order inflicts zero harm upon the Defendants; it merely commands a multi-billion-dollar insurance carrier, ACE American Insurance Company to release the funds of the INDEMNITY" Workers' Compensation benefits (~$110,000.00 annual baseline) that they have already marked as paid on their internal accounting ledgers, **directly to a correct injured worker who's already permanently disabled (exhibit # 20** ), and clear authorizations already marked as approved on their backend ledgers.

13. Conversely, denying relief poses an absolute, life-threatening risk to Plaintiff, as delayed monetary relief cannot repair dead heart tissue or reverse a fatal cardiac event, and lost of homestead (Plaintiff could not paid the delinquent amount to reinstated the loan by June 14, 2026, Chase Bank is working on the foreclosure options, which is foreclosure stage coming up soon within the next few days).

## IV. THE INJUNCTION SERVES THE PUBLIC INTEREST

14. The public has a profound interest in ensuring that national healthcare data networks and Electronic Data Interchange (EDI) clearinghouses are not criminally manipulated, or hijacked by private insurance networks involved R.I.C.O. to withhold life-sustaining mobility equipment, and cardiology care from permanently disabled worker, and a cash indemnity benefit predicated on a ~ $110,000.00 annual salary base line.

15. Furthermore, the public interest is heavily served by strictly enforcing statutory mandates like **Texas Labor Code § 408.021**, ensuring that public safety-net hospitals are not forced to absorb the financial costs of private corporate liabilities. There is a compelling public interest in halting active healthcare fraud, deep insurance fraud, synthetic identity fraud, and the exploitation of the State's Workers' Compensation Database (***TXCOMP***) used to systematically starve, a permanently disabled worker, who was used to make an annual income of more than $110,000.00 down to $298.00 a month in food stamps. The integrity of the federal judiciary and public health systems demands immediate intervention.

16. **EMERGENCY RELIEF REQUESTED:** Plaintiff moves this Court to bypass the stalled administrative machinery, and order Defendant ACE American Insurance Company (CHUBB) to reinstate Plaintiff's INDEMNITY benefits since its inception, and process and deliver Plaintiff's prescribed custom

wheelchair within seventy-two hours under penalty of contempt.

## B. JURISDICTION AND VENUE

### I. FEDERAL QUESTION JURISDICTION

This Court possesses original subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (Federal Question Jurisdiction) and **28 U.S.C. § 1343(a)(3)** (Civil Rights ), as the Plaintiff's claims arise directly under the Constitution and statutory laws of the United States. Specifically, this action is brought to redress ongoing financial, property, and physical injuries engineered by a continuous pattern of racketeering activity, identity theft, and intentional medical deprivations in direct violation of:

17. **The Racketeer Influenced and Corrupt Organizations Act (Civil RICO)**, 18 U.S.C. §§ 1961, 1962(c), 1962(d), and 1964(c), involving independent predicate acts of Mail Fraud (18 U.S.C. § 1341), Wire Fraud (18 U.S.C. § 1343), and Identity Fraud (18 U.S.C. § 1028);

18. **Aggravated Identity Theft, 18 U.S.C. § 1028A**, utilized as a core instrument of a multi-layered insurance siphoning scheme;

19. **Deprivation of Civil Rights Under Color of Law, 42 U.S.C. § 1983**, and **Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985(3)**, arising from a coordinated conspiracy between private insurance actors, state administrative personnel, and local law enforcement officers to suppress evidence and unconstitutionally deprive Plaintiff of vested property interests without due process;

20. **Obstruction of Proceedings Before Federal Agencies, 18 U.S.C. § 1505**, via the bad-faith, capital-intensive suppression of physician-ordered medical metrics required for Plaintiff's pending Federal Social Security Disability Insurance (SSDI) application; and

21. **The Federal Right of Access under the Health Insurance Portability and Accountability Act (HIPAA), 45 C.F.R. § 164.524**, violated through systemic, cross-state digital blockades of certified financial medical records, etc..

### II. SUPPLEMENTAL PROPERTY JURISDICTION

22. This Court has supplemental jurisdiction over all related state-law claims and ancillary regulatory disputes under **28 U.S.C. § 1367(a)**, because the state-law statutory components—including violations of the Texas Insurance Code and Texas Labor Code—are so integrated into the core federal wire fraud, identity theft, and civil rights violations that they constitute part of the same constitutional case or controversy.

## III. ARTICLE III STANDING AND THE FUTILITY OF ADMINISTRATIVE REMEDIES

23. Plaintiff satisfies all standing requirements under **Article III of the U.S. Constitution.** Plaintiff has suffered concrete, particularized, and irreversible injuries to business, property, and person—specifically the unlawful siphoning of vested commercial insurance indemnity streams and advanced, permanent cardiovascular degradation (Left Atrial Enlargement and Brady-Tachycardia Syndrome) proximately caused by the Defendants' medical blockades. These injuries are directly redressable through the equitable, injunctive, and treble-damage remedies available under **18 U.S.C. § 1964(c)** and **42 U.S.C. § 1983.**

24. Plaintiff has completely exhausted all available state-level administrative remedies, or, in the alternative, any further administrative recourse is completely **futile.** As documented by the unconstitutional, suasponte maneuvers of the state administrative order (TDI-DWC ALJ Order), the underlying state administrative apparatus has been thoroughly penetrated and corrupted by the Defendants' racketeering enterprise. Because U. S. Attorney directed to state Authority while the state administrative forum lacks the statutory authority to adjudicate federal civil RICO claims, aggregate identity theft, or cross-agency civil rights conspiracies, <u>immediate federal judicial intervention is the sole mechanism capable of providing an adequate remedy.</u> as well as there's conflict of interests between Plaintiff and Adult Protection Services, F.B.I..

25. **Computer Fraud and Abuse Act Jurisdiction (18 U.S.C. § 1030)**: This Court further possesses original subject-matter jurisdiction over Plaintiff's cyber-fraud and data-manipulation claims pursuant to the **Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(g).** Defendants utilized protected interstate computer networks and automated electronic databases—specifically underwriting platforms and workers' compensation claims databases TXCOMP—without authorization, or exceeding authorized access to execute identity mapping fraud, implement an intentional data embargo, and manufacture severe physical, financial, and medical attrition against a disabled individual." (manufacturing 2nd claim DWC # 25183607)

26. **Supplemental Jurisdiction Over State Law Claims (28 U.S.C. § 1367)**: To the extent that any individual agent or claims adjuster (such as Defendants: Jennifer Bradford, Vicky Bush) is deemed a resident or citizen of the State of Texas, this Court retains absolute jurisdiction over all claims and parties pursuant to **28 U.S.C. § 1367(a)** (Supplemental Jurisdiction).

27. Plaintiff's state common law claims—including common law fraud, fraudulent concealment, and severe tortious conversion—are so intimately intertwined with the core federal Civil RICO violations that they form part of the exact same constitutional case or controversy. The systematic conversion of Plaintiff's Workers' Compensation benefits (**DWC No. 25169058**) and the resulting manufactured housing crisis constitute the direct operative overt acts of a single, cohesive racketeering enterprise.

**28.** Furthermore, under the **All Writs Act, 28 U.S.C. § 1651(a)**, this Court has the explicit authority to issue all writs and emergency temporary orders necessary, or appropriate in aid of its jurisdiction. Immediate judicial intervention is required to freeze the imminent upcoming foreclosure reinstatement window. Tolling this deadline is essential to preserve the Court's own future jurisdiction over the underlying real property asset, and to prevent the physical and medical destruction of a disabled pro se litigant before a full adjudication on the merits can occur.

## IV. VENUE

**29.** Venue is proper in this United States District Court pursuant to **28 U.S.C. § 1391(b)(1) and (b)(2),** and **18 U.S.C. § 1965 (RICO Venue)**, because a substantial part of the events, omissions, and deceptive electronic data transmissions giving rise to these federal claims occurred within this judicial district. Furthermore, multiple corporate and individual Defendants reside, are licensed to operate, transact business, or may be found within this district, and the catastrophic physical and financial injuries resulting from the R.I.C.O. enterprise's unlawful conduct continue to be sustained by the Plaintiff within this geographic jurisdiction.

**30.** A substantial part of the events, systematic data manipulations, mail interceptions, and medical benefit blockades giving rise to Plaintiff's claims occurred directly within this judicial district. Furthermore, the primary real property asset—Plaintiff's unique primary homestead currently facing an imminent, manufactured foreclosure threat—is physically situated within this district, and the corporate defendants conduct substantial, continuous insurance and banking operations within this division.

## C. THE PARTIES

### *I. PLAINTIFF, VAN THI-HANH TRINH,*

**31.** Plaintiff, Van Thi-Hanh Trinh is a female, a U.S. Citizen, a resident of Texas, who resides at Plaintiff's homestead located at 16903 Himley Dr. Cypress, TX 77433 in Harris Couny. Plaintiff was an employee under the Texas Workers' Compensation Act at all times relevant to this action.

### *II. DEFENDANT, JENNIFER BRADFORD*

**32.** Defendant (including any aliases, fake personas, or co-conspirators operating under said identity), is an individual who has engaged in a continuous pattern of fraudulent activity, deceptive trade practices, and civil racketeering inside the State of Texas.

33. To protect against fraudulent concealment and evasion of service, Defendant may be served at her last declared corporate address to whom she has claimed to be employed, as well as business entity address that she requested to have Plaintiff's medical record send to, ESIS Inc. located at **27450 Ynez Rd. St. 300, Temecula, CA 92591**. If Defendant is found to be utilizing a "***shadow enterprise***" or a fraudulent identity to purposefully evade physical service, Plaintiff explicitly reserves the right to execute service via the Texas Secretary of State as statutory agent, or via Substituted Service under Texas Rule of Civil Procedure 106 via email, text message, or publication upon a showing of reasonable diligence.

34. Ultimately, Defendant Jennifer Bradford's physical contact address can be released by TDI-DWC from their internal system when Defendant J. Bradford registered herself as a carrier claim adjuster.

35. Defendant Jennifer Bradford has targeted Plaintiff's Workers' Compensation claim (ACE/ESIS), Plaintiff's auto insurance claim (State Farm), and has even impersonated consumer utilities like Comcast Xfinity, involved in compromising Plaintiff's Internet Service. Defendant has engaged in a highly abuses, multi-layered identity fraud/ DEEP FRAUD, a coordinated "bad actor" scheme. **Defendant is a serial fraudster utilizing fake identities and corporate shadow tactics across multiple platforms,** Defendant will not have a standard residential address waiting for a process server; therefore Plaintiff could only document the major corporations Defendant Jennifer Bradford defrauded Plaintiff through. By legally bringing State Farm and Comcast into the petition alongside ACE American Insurance Company → to also seeking for the forces from their massive corporate legal networks to track down Defendant Jennifer Bradford's real identity, IP logs, employee files, or physical location to protect themselves.

### *III. DEFENDANT, VICKY BUSH*

36. Defendant is an individual & Multi-Agency Persona/ including any aliases, fake corporate personas, or co-conspirators operating under said identity), is an individual who has engaged in an ongoing, continuous pattern of identity theft, mail fraud, wire fraud, and civil racketeering within the State of Texas. Defendant Bush acted as an active co-conspirator and deceptive gatekeeper for Defendants ESIS, Inc. and ACE American Insurance Co. "shadow" intentionally intercepting Plaintiff's Doctor calls and routing them to Defendant Jennifer Bradford to facilitate the 17-month theft of Plaintiff's indemnity insurance benefits and block critical cardiologist care, PCP and Lab orders...

37. **Defendant is a serial fraudster utilizing fake identities and corporate shadow tactics across multiple platforms.** Reflecting a sophisticated, cross-industry scheme to systematically control and defraud Plaintiff's financial livelihood, Defendant Bush routinely utilized fraudulent aliases and false corporate credentials to impersonate:

- An "Executive Specialist" for **JPMorgan Chase Bank, N.A.** to manipulate and interfere with Plaintiff's residential mortgage loan;
- A Customer Care Supervisor for **Gexa Energy** to orchestrate and execute unauthorized utility disconnections at Plaintiff's residence; and
- A fraudulent persona designated as **"Ms. Bailey"** to intercept and interfere with Plaintiff's formal communications with the **Internal Revenue Service (IRS), seeking assistant with identity theft and ~$30,000.00 early distribution withdraw issues.**

38. To prevent fraudulent concealment, active evasion, or corporate shielding, Defendant Vicky Bush may be served with process at the local administrative operational office located at **1999 Bryan Street, Dallas, Texas 75201**; or at the corporate headquarters located at **436 Walnut Street, Philadelphia, PA 19106.** Because Defendant actively employs highly deceptive shadow tactics, synthetic personas, and multi-layered fraud to evade detection, Plaintiff explicitly reserves the right to execute service via the **Texas Secretary of State** as statutory agent.

## *IV. DEFENDANT, DOWNS & STANFORDFRANCES OWINGS, PC (SUED HEREIN AS DOWNS & STANFORD, P.C.),*

39. Defendant is a domestic professional corporation organized under the laws of the State of Texas, actively engaged in the business of legal representation and insurance defense, comprised of licensed attorney, and an agent, employee, or shareholder of Downs & Stanford, P.C..

40. **Defendant** engaged in a continuous pattern of fraudulent activity, is found to be utilizing a "shadow enterprise" / a fraudulent identity player of "ACE American Insurance Co."→ **"shadow" organization utilizing fake identities and corporate shadow tactics** to defraud the State of Texas electronic system known as "TXCOMP".

41. Upon information and belief, Defendants Downs & Stanford, P.C. and Frances Owings stepped entirely outside the boundaries of legitimate legal representation and acted in active concert, conspiracy, and as part of a common civil racketeering enterprise with Defendants Jennifer Bradford,

Robert Graves, and Leeanna Gainer Mask, and Vicky Bush, as well as TDI-DWC insiders.

42. Specifically, Defendants Downs & Stanford, P.C. and Frances Owings knowingly and intentionally exploited a critical structural flaw within the State of Texas's **TXCOMP** database system, which utilized a text-string corporate name combination as its primary key data field rather than a fixed Federal Employer Identification Number (FEIN). Defendants actively utilized and maintained a fraudulent "shadow clone" iteration of the carrier's name—designating it as **"ACE American Insurance Co."** as a separate primary key from the legally recognized **"ACE American Insurance Company."** This parallel data entry was weaponized to illicitly process, conceal, and launder Plaintiff's ~ **$115,000.00** baseline indemnity insurance benefits for over seventeen (17) months, while concurrently using the secondary real corporate profile to issue fraudulent denials and block Plaintiff's life-sustaining wheelchair, cardiologist, PCP cares, Referals and lab works..., causing Plaintiff to spiral into advanced heart failure.

43. **Defendant Downs & Stanford, P.C.** may be legally served with process by delivering a copy of this citation and petition to its authorized personnel at its active Austin operational office located at **5316 West Highway 290, Suite 340, Austin, Texas 78735.**

## *V. DEFENDANTS: ROBERT GRAVES[1] AND LEEANNA GAINER MASK,*

44. Defendants are individual licensed attorneys and partners/agents operating within the State of Texas at law firm: **BURNS ANDERSON JURY & BRENNER, LLP (BAJB)**, is a domestic registered professional partnership/limited liability partnership engaged in insurance defense litigation.

45. **DEFENDANT, ROBERT GRAVES**, is an individual, licensed attorney, and an agent or employee of Downs & Stanford, P.C. **DEFENDANT, LEEANNA GAINER MASK**, is an individual, licensed attorney, and an agent, employee, or shareholder of Downs & Stanford, P.C. **Both individuals are sued in their individual capacities for engaging in independent acts of common-law fraud, civil conspiracy, and violation of the Texas Insurance Code that step completely outside the scope of permissible legal representation.**

47. Upon information and belief, Defendants Graves and Mask acted as the primary tactical operators for the fraudulent enterprise inside the administrative hearing rooms of the State of Texas. Defendant

---

[1] On October 2025 at the Benefit Review Conference, Defendant Robert Graves provided Plaintiff an "exchanged packet", in which clearly constituted, RE-ENFORCED, and SOLIDIFIED Plaintiff's case transitioned into a "DEEP INSURANCE FRAUD", a biometric racketeering of RICO enterprise. Regardless, Mr. Graves indicated that he has sent the packet to Plaintiff, but Plaintiff has not ever received it. With a persona gratitude, Plaintiff temporarily removed Defendant Robert Grave from the Defendant list, and will subpoena him to Court instead.

Graves appeared on behalf of the fraudulent shadow entity "**ACE American Insurance Co.**" at Plaintiff's Benefit Review Conference (BRC). Upon being exposed for engaging in fraud & conspiring with Defendant Jennifer Bradford within Plaintiff's Federal Tort Claims Act (FTCA) and RICO filings, Case No. 25-20505/ 4:24-cv-01231, (see Road map for interconnected Litigations). Defendant Robert Graves withdrew from active appearances, and was seamlessly replaced by his partner, Defendant Leeanna Gainer Mask, who appeared at the Contested Case Hearing (CCH) to perpetuate the active concealment (→continuous pattern of racketeering).

**48.** To insulate the ~$110,000.00 baseline indemnity theft and prevent the state system from locking in Plaintiff's true identity metrics, **Defendant LeeAnna G. Mask fraudulently misrepresented to Plaintiff that the mandatory DWC-001** (Employer's First Report of Injury) had been "verbally completed" and that no physical form existed. This material misrepresentation was intentionally deployed to **bypass statutory disclosure requirements, withhold vital identity data, and maintain the duplicate claim tracking loop** that blocked Plaintiff's advanced heart failure medical care. Regardless, Defendant L. Mask acknowledged the fact that a former attorney Tammy Tran had indicated that, Plaintiff "*will get paralyzed and no one will hire*" Plaintiff through a 4 pages documented exhibit thatPlaintiff provided at the Contested Case Hearing, (exhibit # 1, page # 4). Whereas, Defendant L. Mask's acknowledgement was formed to re-verifying the fact within Plaintiff's exhibit via verbal question.

**49.** All individual and entity legal actors, represent themselves as attorneys for "**ACE American Insurance Co.**" **(Downs & Stanford, P.C)** are sued herein for stepping completely outside the boundaries of legitimate legal representation by actively fabricating information, concealing mandatory statutory filings, especially **withheld Form DWC-001** [2] (***"red flag"***), and maintaining a parallel entities name manipulation scheme (**"ACE American Insurance Co."**) within the TXCOMP system to launder Plaintiff's **~$110,000.00** baseline indemnity Workers' Compensation benefits while starving Plaintiff of advanced heart failure medical cares...

**50.** Defendants Robert Graves, Leeanna Gainer Mask, and Burns Anderson Jury & Brenner, LLP may be legally served with process by delivering a copy of this citation and petition to their principal operational headquarters located at **4807 Spicewood Springs Road, Building 4, Suite 100, Austin,**

---

[2] What they did by withholding the **DWC-001 (Employer's First Report of Injury or Illness) is a cornerstone of their data-laundering scheme.** In Texas, the **DWC-001 is a mandatory statutory form that locks in Plaintiff's exact baseline salary, hire date, and identity. IT IS IMPOSSIBLE TO LEGALLY PROCESS A WORKERS' COMPENSATION CLAIM WITHOUT DWC-001.** By lying to Plaintiff and claiming the carrier "verbally completed" it, Robert Graves & Leeanna Gainer Mask intentionally blocked the official document from entering the real tracking system. They used that lie to keep the true data hidden while they operated/represented the shadow "ACE American Insurance Co." pipeline. .. When Plaintiff exposed Robert Graves in Plaintiff's federal filings within the amend petition attachment for Writ of Mandamus of case 25-20505/ 4:24-cv-01231, the enterprise simply swapped him out for his partner, Leeanna Gainer Mask, to continue the concealment at Plaintiff's Contested Case Hearing (CCH). Furthermore, when Leeanna Gainer Mask continued to engage in fraud to defeated Plaintiff in the CCH, defraud the justice system to gain the favor from the Administrative Law Judge on denying Plaintiff's Claim, as well as TDI-DWC Appeal Panel Judges continue to denied Plaintiff's Claim → leading to "**OBSTRUCTION OF JUSTICE**".

**Texas 78759.** In the event the corporate shielding or active evasion is utilized to dodge physical delivery at the Spicewood Springs complex, Plaintiff explicitly reserves the right to execute service via the **Texas Secretary of State** as statutory agent.

## *VI. DEFENDANT, OFFICE OF INJURED EMPLOYEE COUNSEL ("OIEC")*

**51.** Defendant is an independent agency of the State of Texas. Pursuant to the Texas Labor Code, notice of this action is being provided to the Public Counsel / Chief of the Office of Injured Employee Counsel at their principal office located at the **Barbara Jordan State Office Building, 1601 Congress Ave., Austin, Texas 78701**.

**52.** FOR STATE AGENCY SERVICE: Pursuant to Texas law, a copy of this citation and petition is also being served upon the Office of the Attorney General of Texas, Main Office, 300 W. 15th Street, Austin, Texas 78701, to ensure proper statutory notice is given to the State of Texas and its respective divisions, the Office of Injured Employee Counsel (OIEC).

## *VII. DEFENDANT, TEXAS DEPARTMENT OF INSURANCE- DIVISION OF WORKERS' COMPENSATION ("TDI-DWC")*

**53.** Defendant is an administrative division of an agency of the State of Texas. Pursuant to Texas Labor Code § 410.258, TDI-DWC is a necessary party to receive service of this petition. Service of this citation and petition shall be delivered to the Commissioner of the Division of Workers' Compensation at the principal office located at the **Barbara Jordan State Office Building, 1601 Congress Ave., Austin, Texas 78701.**

**54.** FOR STATE AGENCY SERVICE: Pursuant to Texas law, a copy of this citation and petition is also being served upon the Office of the Attorney General of Texas, Main Office, 300 W. 15th Street, Austin, Texas 78701, to ensure proper statutory notice is given to the State of Texas and its respective divisions, the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC).

## *VIII. DEFENDANT, ACE AMERICAN INSURANCE COMPANY ("ACE")*

**55.** Defendant is a CHUBB subsidiary, known as "ACE American Insurance Company ("ACE"), insurance carrier authorized to do business in Texas, insurance carrier for Plaintiff's former employer—CITGO Petroleum Corporation ("CITGO"). Defendant may be served with process by serving its designated registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 (per TDI-DWC/ Chief Clerk Proceeding); or at corporate office locate at, ______________________________

______________________________

by serving through Texas Secretary of State Citations Unit [3], pursuant to the Texas Insurance Code. (1-800-claims-0) → (1-800-252-4670).

[3] Citations Unit James Earl Rudder Office Building 1019 Brazos Street Austin, TX 7870

## IX. *DEFENDANT, MEDICALL*

56. Defendant is **A Cognizant Company,** a multi-billion-dollar Fortune 500, medical management corporation—to execute a formal, statutory **Utilization Review (UR).** Defendant's headquarter office reprented as, **Cognizant Technology Solutions - World Headquarters, located at, 300 Frank W Burr Blvd, Suite 36, 6th Floor, Teaneck NJ 07666 (phone: 201-801-0233 ).** Whereas Defendant Medicall used the P.O. Box 4379, Westlake Village, CA 91359address in California, to document their UR Report for ESIS. As a result serving citation is required a physical address, therefore Defendant Medicall can be served at its headquarter office located in New Jersey, or by serving the **Texas Secretary of State Citations Unit.**

NOTE: CITGO Petroleum Corporation, Plaintiff's former employer is also involved in the case, however CITGO was a defendant on 25-20505, there fore plaintiff will inform/serve CITGO and subpeona CITGO to court for this case instead.

## D. STATEMENT OF FACTS

### IX. *THE STRUCTURAL ROOTS OF THE CLAIM AND ADMINISTRATIVE FAILURE/ THE CORPORATE IDENTITY FRAUD SCHEME*

57. **The Discovered Claim & Establishment Of The Baseline Record:** In December 2024, Plaintiff discovered her absolute eligibility for Texas Workers' Compensation benefits and filed a lawful "Discovered Claim" with the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) on December 9, 2024 (Plaintiff written on form DWC-041). Shortly after, about 10 days later, TDI-DWC created a claim for Plaintiff, → **DWC No. 25169058.** The claim was officially acknowledged by CHUBB.COM's AVP Claims Compliance Specialist, Marilee Brabson, who issued **Carrier Claim No. 1E01E017457802.** Through **exhibit # 27,** Plaintiff's Workers' Compensation claim also has been remaining as an active **"INDEMNITY"** insurance type, under **Carrier Claim No. 1E01E017457802** which was **set to Subcriber ID on the hospital's face-sheet/ledger,** reflecting Plaintiff's true ~ **$110,000.00** baseline annual salary and permanent disability status (**exhibit # 4, page # 3**). Whose Third Party Claim Administrator, ESIS also classified Plaintiff's claim type as "discoveryi" within its introduction letter, EWC0002 (**exhibit # 4, page # 7**).

58. **Creation of the Shadow Claim /The ~35-Day Delay and the Manufactured Fraud Shell:** about **thirty-five (35) days** after the legitimate primary claim (**DWC No. 25169058**) was established, Defendant Jennifer Bradford and her co-conspirators corporate-engineered a fraudulent secondary claim (**DWC No. 25183607**). **This ~35-day gap was a deliberate operational window used to monitor the live backend approval/benefit entitlement/ revenue streams before fabricating a public-facing denial shell to mask the ongoing conversion of Plaintiff's benefits.**

59. On January 26, 2025, Defendant Jennifer Bradford represented

herself to Plaintiff that she's a claim Adjuster for ESIS -- a Third Party Claim Administrator for Dependant ACE American Insurance Company (exhibit # 11), opposing to the initial Claim Adjuster, Ms. Stella whom was firstly informed to Plaintiff by TDI-DWC. Jennifer Bradford, together with her co-conspirators engaged in a fraudulent, unauthorized identity-theft scheme. Defendants hijacked Plaintiff's identity and employment metrics to establish, and intentionally coupled with a synthetic identity and a fraudulent, secondary Social Security Number, to defraud Plaintiff's legitimate Workers' Compensation benefits, DWC # 25169058, while denied Plaintiff's claim was issued on a second **DWC No. 25183607**, by outrageously conducted the followings:

(a). **Exploitation of TXCOMP Systemic Vulnerabilities:** Plaintiff would show that Defendants Downs & Stanford, P.C., Frances Owings, Jennifer Bradford, Vicky Bush, and ACE American Insurance Company corporate actors actively and knowingly exploited a critical structural flaw within the State of Texas's TXCOMP database system. Specifically, the TXCOMP system utilized a text string corporate name combination as its primary key data field, rather than a fixed Federal Employer Identification Number (FEIN).

(b). **Creation of the Database Shadow Clone:** Capitalizing on this system vulnerability, Defendants systematically entered and maintained a fraudulent, shadow iteration of the carrier's name, utilizing the designation "ACE American Insurance Co." as a distinct primary key separate and apart from the legally recognized "ACE American Insurance Company."

(c). **Fraud on the State and Data Laundering:** This deliberate name manipulation scheme allowed the common enterprise to construct a parallel, unauthorized data pipeline directly within the state's worker's compensation system. Defendants: Jennifer Bradford, Vicky Bush and their co-conspirators utilized the shadow clone entry to illicitly process, conceal, and launder Plaintiff's ~$110,000.00 baseline indemnity insurance benefits for over seventeen (17) months, while concurrently using the secondary real corporate profile to issue fraudulent denials and block Plaintiff's life-sustaining cardiological medical care and lab work

(d). **The Pre-Meditated Denial Shell:** On January 26, 2025, Defendant Jennifer Bradford initiated contact with Plaintiff via personal text & voice messages, fraudulently presenting herself as Plaintiff's lawfully assigned claim adjuster. **On January 29, 2025**, while conducting a telephonic interview, Plaintiff experienced a severe cardiac arrhythmia. The interview was abruptly suspended, whereas Plaintiff was agreed upon to send J. Bradford the compensable documents ASAP within about the next couple days, and Defendant Bradford explicitly instructed Plaintiff ***NOT*** to write the primary **DWC Claim No. 25169058** on any medical or administrative documents, clearly stating that she already had the DWC Claim No., while Plaintiff has no knowledge of a second shadow claim **DWC No. 25183607** has been created to support the Defendants' fraud scheme.

Without examining the 14-page that Plaintiff faxed to Defendant J. Bradford on Jan. 29, 2025 (exhibit #7), includes Urgent Cardiac pending test and employer Retaliation exposure to harm

(e). The following day, **January 30, 2025**, without waiting for Plaintiff's compensable documentation and without conducting any reasonable investigation, Defendant Bradford issued an arbitrary verbal denial. To evade regulatory audits, **Bradford completely failed to issue a formal, statutorily compliant written denial letter**, routing all subsequent automated electronic correspondence through restrictive, un-monitored electronic shells, → **violated basic TDI-DWC compliance laws to evade automated regulatory audits.**

(f). **The February 11, 2025 "Obsolete" Deception and Secret Wage Forgery:**

- **DWC NO.: 25169058 was entirely "OBSOLETE":** On about **February 10, 2025,** officials within the Office of Injured Employee Counsel (OIEC) actively insulated this fraud. OIEC explicitly instructed Plaintiff that Plaintiff's valid primary claim, DWC No.: 25169058 was entirely "***obsolete***" and ordered Plaintiff to exclusively utilize the fraudulent secondary claim, DWC No. 25183607 (this was a day Plaintiff first time learned about an existence of the second duplicated DWC No. 25183607 creation)(exhibit # 17).

  this DWC 003 was completed by CITGO (Plaintiff's employer) & sent to Down & Stanford

- **The Fraudulent DWC-003 Interception:** On about the third week of February 2025, Defendants covertly executed the DWC Form-003 (Employer's Wage Statement) from Plaintiff's former employer, CITGO Petroleum Corporation, without Plaintiff's knowledge or consent. This unauthorized filing was weaponized to illicitly siphon, allocate, and collect financial benefits from ACE American Insurance Company under the guise of Plaintiff's ~ $115,000.00 baseline earnings, etc..

TDI-DWC insiders engaged/enforced this frauds scheme by process a merge claims due to "duplicated,"

(g). **The TXCOMP System Flaw Weaponized:** This "merging" remains a technical fiction. The ***TXCOMP*** electronic platform has system flaws→ it does not utilize a Federal Identification Number (FIN) or an immutable Social Security Number as its primary key. It relies on weak, malleable text-string variables (*Claimant Name, Employer Name, and Insurance Carrier Name*). Whereas the slightly variations of names can be interpreted as a different entity. Defendants intentionally abused this architectural flaw to nest two entirely distinct data tracks (claims) attached to two different Social Security Numbers under a single injure, a single public-facing number:

## X. *THE ANATOMY OF THE TXCOMP DATABASE EXPLOIT: DEEP INSURANCE FRAUD VIA SYNTHETIC IDENTITY SPLITTING*

70. **The Systemic Database Flaw (The Vulnerability Vector):** Plaintiff alerts this Court to the exact technological mechanism utilized by Defendant Jennifer Bradford and her co-conspirators to execute this parallel grid fraud undetected by state regulators. The Texas Department of Insurance, Division of Workers' Compensation data infrastructure (**TXCOMP**) contains a critical, systemic structural vulnerability. Rather than utilizing a single, unalterable unique identifier—such as a verified Social Security Number (SSN) or Federal Employer Identification Number (EIN)—as its absolute database primary key, the TXCOMP system relies on a weak, composite primary key consisting of three text strings: *Injured Employee Name*, *Employer Name*, and *Insurance Carrier Name*.

71. **The Split-File Architecture (The Siphon vs. The Hoax):** By exploiting this precise text-matching vulnerability, Defendants successfully bypassed system duplication alerts and manufactured two concurrent, conflicting electronic claim tracks for a single physical injury. This artificial bifurcation split Plaintiff's legal identity into two distinct operational tracks:

| **SINGLE CATASTROPHIC INJURY** | |
|---|---|
| **TWO (2) CLAIM DWC NO. CREATED FOR A SINGLE INJURE**<br>(DWC No. 25169058 and DWC No. 25183607 ) | |
| **CLAIM A: THE SIPHON** | **CLAIM B: THE HOAX** |
| **DWC No. 25169058**<br>*(created around the middle of December 2024)* | **DWC No. 25183607**<br>*(Created around January 21, 2025)* |
| Profile: "Van Trinh"<br>Fraud and Social Security # | Profile: "Van Thi-Hanh Trinh"<br>Current SSN: X3X-1X-X7X 1 |
| Employer: "**CITGO Petroleum Corporation**" | Employer: "**CITGO Petroleum Corp.**" |
| Carrier: "**ACE American Insurance Company**" | Carrier: "**ACE American Insurance Co.**" |
| Status: LIVE, APPROVED, **ACTIVE INDEMNITY** | Status: **SYSTEMATICALLY DENIED** |
| Function: Secret Financial Revenue Engine | Function: External Consumer Deflector |

72. **CLAIM A: The Synthetic Siphon Profile (DWC No.: 25169058):** This is the hidden backend file that runs parallel within the national Electronic Data Interchange (EDI) and healthcare clearinghouse networks. Defendants mapped this profile to a stripped variation of Plaintiff's name (**"Van Trinh"**), and a true employer name (**"CITGO Petroleum Corporation"**), and true carrier name (**"ACE**

**American Insurance Company"**) and an unauthorized, secondary cloned SSN generated in November 2023 (the subject of active Case No. 25-20446/ 4:24-cv-01997).

- This is the hidden backend file mapped to a secondary cloned SSN generated in November 2023. This profile registers on the backend as a completely valid, approved, mature, and functional policy under an active "***INDEMNITY***" classification. It satisfies internal audits, **captures accurate wage calculations based on Plaintiff's true $115,000.00 baseline salary, and serves as a secret financial revenue engine to divert corporate insurance funds into syndicate-controlled asset streams.**

- ***The Revenue Engine:*** Because this profile is attached to Plaintiff's true, severe diagnostic medical records (showing active apical & anterior perfusion defects, ST-segment elevation-- myocardial injury, common & bilateral external/ internal carotid shown intimal thickenings and advanced vascular degradation), it registers on the backend as a completely valid, approved, and fully compensable claim. It actively satisfies internal corporate compliance audits, generates multi-thousand-dollar monthly cash indemnity allocations, and clears electronic billing for providers—all of which are diverted into syndicate-controlled corporate asset streams while keeping the parent policy active on the backend.

93. **CLAIM B: The Real Identity Hoax Profile (DWC No.: 25183607):** This is the artificial, closed-loop file weaponized directly against the disabled worker. It is tied to Plaintiff's true legal name (**"Van Thi-Hanh Trinh"**), a truncated employer text string (**"CITGO Petroleum Corp."**), and a fraud carrier name (**"ACE American Insurance Co."**), purported by Down & Stanford, Frances Owings, Pc, and Plaintiff's genuine, valid Social Security Number which was currently in Plaintiff's possession.

- ***The Blockade Engine:*** This external shell is kept in a permanent, artificial "Denied" status. To prevent the automated generation of state-mandated physical hearings, statutory notices, or paper trails that would alert state oversight compliance officers, Defendant Jennifer Bradford managed this entire profile through uncertified, informal email shells and text messages. This closed-loop profile exists solely to financially starve Plaintiff, block Plaintiff from accessing her medically prescribed custom wheelchair, lab-work, specialist referrals and isolate Plaintiff from critical, life-saving cardiology interventions.

94. **Conclusion on Fraudulent Conversion:** This structural analysis demonstrates that **Defendants: Jennifer Bradford, Vicky Bush and their co-conspirators have converted a state-administered public welfare database into an active mechanism for identity theft and wire fraud.** They have successfully commercialized Plaintiff's catastrophic physical injuries on the backend (**CLAIM A: DWC No.: 25169058**) while completely denying Plaintiff the human right to medical survival on the

frontend (**CLAIM B: DWC No. 25183607**). → Immediate equitable intervention via an ***EX PARTE Temporarily Restraining Order (TRO), and Preliminary Injunction*** is required to collapse this fraudulent dual-routing network, and restore Plaintiff's lawful access to medical cares, custom wheelchair of auto motor, as well as income benefits.

## *XI. "TC99M SESTAMIBI" NUCLEAR STRESS TEST VS. CLINICALLY & LEGALLY "ALARMING"[4] / EXTREME MEDICAL WILLFUL ENDANGERMENT DURING HIGH-RISK CARDIAC TESTING, FALSIFICATION OF RECORDS & MEDICAL IDENTITY THEFT TO CONCEALING ILLICIT INDEMNITY WORKERS' COMPENSATION BENEFITS*

***ADMINISTRATIVE NOTICE:*** *The foundational patterns of this multi-layered corporate conspiracy are currently subject to litigation in Case No. 25-20505 (4:24-cv-01231). The facts documented within this motion are specifically presented to support Plaintiff's request for immediate injunctive relief to suppress the weaponization of defamatory psychiatric pretexts. The matters addressed herein concern essential components of Plaintiff's Primary Care Physician (PCP) and Cardiologist care, associated medical records, Medicall services, and related Workers' Compensation matters (See Roadmap of Interconnected Litigation.)*.

### Material Fact of Extreme Medical WILLFUL Endangerment During High-Risk Cardiac Testing, Fraudulent Record Manipulation, and Fiduciary Breach via Dr. Isaac's Administrative Profile Alteration:

Jennifer Bradford & R.I.C.O. associated actors

75. OVERVIEW **OF A CHILLING MEDICAL FRAUD SCHEME**[5]: Defendants intentionally falsified Plaintiff's protected electronic health records, stripping away her real next-of-kin information and substituting a fraudulent emergency family contact number 281-________ to hide an unauthorized, parallel—a valid legitimated and fully entitled Workers' Compensation claim, **DWC No. 25169058**. By stripping away real emergency contacts prior to a high-risk, radioactive Nuclear Stress Test, Defendants created an active, life-threatening danger where a fatal cardiac event would be hidden from Plaintiff's family. To insulate RICO enterprise (i) during a high-risk Tc99m Sestamibi Nuclear Stress Test, (ii) to seal this medical blockade, and (iii) to protect the financial fraud, and (iv) justify a wrongful discharge, R.I.C.O. Enterprise conspired with Plaintiff's cardiologist staffs to wrongfully discharged Plaintiff, withheld her self-pay invoices, and weaponized local law ________, supress plaintiff's self-payments

[4] **CRITICAL POINT**: the administrative manipulation as both an independent act of **gross negligence / willful endangerment** and as a overt act in furtherance of the broader **civil conspiracy and fraud** designed to deny Plaintiff medical care.

A Nuclear Stress Test involving **Cardiolite (Technetium Tc99m Sestamibi)** carries inherent cardiac risks, as it intentionally stresses the heart to detect blood flow issues. If a patient experiences a severe adverse reaction, myocardial infarction (heart attack), or cardiac arrest during the test, having a **fraudulent emergency contact** completely severs the provider's ability to obtain accurate medical history from family or secure immediate, authorized consent.

By inserting a perpetrator's number, the clinic created a life-threatening barrier to emergency communication. In legal terms, doing so with knowledge of the test's risks demonstrates a reckless disregard for human life.

[5] OPTION DEMONSTRATION:

**The Interconnection:** They explicitly state that the missing invoices, the fake phone number, and the police trespass warning are *not* separate accidents—they are elements of a single conspiracy to hide workers' comp fraud.

**The Retaliation:** By highlighting that the police were called *on the day of the high-risk procedure*, it shows the court a highly suspicious, tactical timeline rather than a routine clinic discharge.

enforcement to arrested Plaintiff for "criminal trespass" on the exact day of Plaintiff's heart assessment review & treatment, March 10. 2025, deliberately preventing Plaintiff from discovering the altered records and billing concealment.

76. **Subsequently, after a new appointment provided to Plaintiff for April 28, 2025, another month apart.** Plaintiff was then being discharged wrongfully on April 5, 2025 without reason via a letter as well as in-person (exhibit # 14, page # 2). Followed with having local law enforcement issued a trespass warning when Plaintiff came back to pickup medical record and billing info for a new cardiologist on May 2025. This calculated blockade effectively silenced the patient, protected the stolen compensation benefits, and subverted the entire administration of justice.

77. Key Elements Highlighted for the Court:

- **The Financial Fraud:** Connects the missing suppressing billing invoices directly to the hidden, parallel workers' comp account.
- **The Physical Danger:** Frames the altered phone number not just as a typo, but as a life-threatening risk during a volatile radioactive cardiac test.
- **The Police Involvement:** Explicitly links the trespass warning to a tactical "blockade" meant to stop Plaintiff from uncovering the fraud on the day of Plaintiff's appointment.

**LEGAL FACTUAL:**

---

78. Plaintiff discovered deeply alarming, unauthorized alterations within the Patient Management System of her treating cardiologist, Dr. Isaac. Administrative staff consistently and systematically refused to provide Plaintiff with formal billing invoices directly generated from their official Patient Management System, that could show all of the payments amount that Plaintiff has been paid out of pocket since January 8, 2025 → **a classic badge of financial concealment designed to obscure the parallel, fraudulent Dual-Claim Architecture (PAID by claim DWC NO. 25169058 (approved claim),** siphon with a fraud duplication claim, DWC No. 25183607 (denied) engineered by Defendants.

79. Far more egregious and life-threatening, a perpetrator maliciously compromised Plaintiff's critical medical data by inserting an unauthorized telephone number—' —into Plaintiff's official electronic medical profile, falsely designating this number as Plaintiff's "family emergency contact."

80. This fraudulent data manipulation was intentionally positioned directly prior to Plaintiff undergoing a highly volatile, high-risk Nuclear Stress Test involving diagnostic injections of Cardiolite (Technetium Tc99m Sestamibi). Given Plaintiff's documented serious heart failure, this specific nuclear imaging procedure carries a high risk of acute cardiac distress, arrhythmia, or myocardial infarction.

81. By secretly replacing Plaintiff's true next-of-kin with a perpetrator's contact number, the

administrative operators engineered a lethal mechanism: had Plaintiff suffered an absolute biological collapse or died under the influence of the radiopharmaceutical Tc99m injection, emergency code-blue protocols and mandatory medical notifications would have routed directly to the conspirators/perpetrators rather than actual emergency services or lawful family members. This active sabotage of patient safety standards constitutes a severe breach of fiduciary duty, a violation of the Texas Medical Records Privacy Act (Tex. Health & Safety Code § 181.001 et seq.), and reckless medical endangerment that creates an imminent, non-compensable threat to human life, fully satisfying the irreparable harm requirement under Fed. R. Civ. P. 65(b).

82. A Nuclear Stress Test involving Cardiolite (Technetium Tc99m Sestamibi) carries inherent cardiac risks, as it intentionally stresses the heart to detect blood flow issues. If a patient experiences a severe adverse reaction, myocardial infarction (heart attack), or cardiac arrest during the test, having a fraudulent emergency contact completely severs the provider's ability to obtain accurate medical history from family or secure immediate, authorized consent.

83. By inserting a RICO associated actor's number, the clinic created a life-threatening barrier to emergency communication. In legal terms, doing so with knowledge of the test's risks demonstrates a reckless disregard for human life.

**THE LEGAL & REGULATORY FRAMEWORK** (prosecuted in 25-20505, see Roadmap)

84. Irreversible **Irreparable Harm (Rule 65)** [6]: In federal courts, a plaintiff must show a substantial likelihood of irreparable injury. Forcing a patient with advanced heart failure to undergo a highly volatile diagnostic procedure (a Nuclear Stress Test using radioactive tracers like **Tc99m Sestamibi/Cardiolite**) while intentionally falsifying emergency contact information constitutes an existential threat to life. Courts universally recognize that a threat to life or a permanent medical collapse satisfies the "irreparable harm".

➔ **On Irreparable Medical Harm:** *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029 (5th Cir. 2010) (Establishing that injury is irreparable if it cannot be undone through monetary remedies; physical or biological collapse constitutes ultimate irreparable harm).

85. **Texas Medical Records Privacy Act & Health & Safety Code (§ 181.001 et seq.)**: Medical providers are strictly required to maintain accurate, uncorrupted patient records. Inserting a third-party perpetrator's phone # unauthorized into a critical medical profile as a "family emergency contact" is a dangerous manipulation of health information data.

86. Breach **of the Standard of Medical Care & Fiduciary Duty:** Administrative staff operate under the license and supervision of the medical provider. Falsifying emergency contacts for high-risk cardiac

[6] "IRREPARABLE INJURY"—and nothing satisfies this more than an intentional medical setup that could result in death.

testing actively prevents proper emergency response protocols (e.g., if code-blue protocols or notification of next-of-kin are triggered).

87. **Concealment of Billing Records (Fraud / Lack of Transparency):** Refusing to provide formal invoices from within their official Patient Management System is indicative of financial concealment, designed to obscure who is actually billing or paying for the unauthorized, parallel dual-claim services; especially altered Plaintiff's legal name on Plaintiff's medical records that Plaintiff borrowed money from family & friend to pay for and used it to siphon claim # for cash flow is federal offense.

88. **Falsification of Medical Records & Medical Identity Theft**

- Texas **Penal Code § 32.51 (Fraudulent Use or Possession of Identifying Information):** Utilizing a fraudulent phone number or misrepresenting an individual's identity as a family member within a medical database can constitute medical identity theft.
- Tampering **with Medical Records:** Intentionally entering false data into a Patient Management System that affects patient safety can be treated as fraudulent misrepresentation or forgery, and it constitutes a severe violation of the **Texas Medical Practice Act.**

89. Gross Negligence/ willful endangerment and "Zone of Danger"

Because the administrative staff's fraudulent actions directly tied into a high-risk medical procedure (the Nuclear Stress Test), the legal threshold moves from ordinary negligence to **Gross Negligence.**

- Definition: Gross negligence requires proof that the defendant was subjectively aware of an extreme degree of risk but proceeded anyway with conscious indifference to the safety or life of others.
- **The "Fatal" Element:** Because an incorrect contact could prevent life-saving intervention or notification during a cardiac event, the clinic exposed the Plaintiff to a foreseeable "zone of danger."

90. **Refusal to Provide an Invoice (Billing Transparency & HIPAA)**[7]

Withholding formal invoices within the Patient Management System violates both federal and state healthcare transparency laws:

- HIPAA Privacy Rule (45 C.F.R. § 164.524): Under federal law, a patient has an absolute Right of Access to inspect and obtain a copy of their Protected Health Information (PHI), which explicitly

---

[7] **Key Legal Takeaway:** In a formal pleading or complaint to the **Texas Medical Board (TMB)** or the **U.S. Department of Health and Human Services (HHS)**, these facts should be framed not as separate administrative glitches, but as a coordinated breach of the standard of care—where billing concealment masked fraudulent data entry that actively placed a patient's life at risk during an advanced cardiac procedure

includes all billing, payment, and invoice records. A persistent refusal to provide these is a direct HIPAA violation.

- Texas Medical Records Privacy Act: Mirroring HIPAA, Texas law requires providers to release complete records, including billing logs, within a strict statutory timeframe (usually 15 business days from a written request).
- Texas Deceptive Trade Practices Act (DTPA): Concealing or refusing to provide accurate financial/billing statements while providing a service can be flagged as an unconscionable action or a deceptive trade practice under Texas business codes.

91. **18 U.S.C. § 1347 (Health Care Fraud):** It is a federal crime to knowingly and willfully execute a scheme to defraud any health care benefit program, or to obtain money/property owned by a health care benefit program under false pretenses.

- **Texas Penal Code § 32.51 (Fraudulent Use or Possession of Identifying Information):** Obtaining, possessing, or using an item of identifying information of another person without their consent.
- **Texas Insurance Code § 701.001 et seq. (Insurance Fraud):** Broadly covers fraudulent acts committed in connection with an insurance transaction.

**CONTROL CASE LAW:** (prosecuted in Case # 25-20505, see Roadmap).

92. Civil **Conspiracy & Overt Acts:** To establish a civil conspiracy, a plaintiff must show a combination of two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means, and an **overt act** that causes damage. (*Akin v. Dahl*, 661 S.W.2d 911, Tex. 1983). The unauthorized insertion of a fake emergency contact to cover a lethal stress test is an overt act.

93. **Irreparable Harm (The TRO Standard):** In the Fifth Circuit, to obtain a TRO/Injunction, the threat of injury must be *real, imminent, and irreparable*. Speculative injury is not enough, but proof of medical deprivation or extreme physical risk meets this high burden. (*Chacon v. Granata*, 515 F.2d 922, 5th Circuit).

94. Medical **Negligence vs. Intentional Tort:** When administrative staff manipulate a patient's profile with fraudulent emergency data to bypass consent or notification protocols, it crosses the line from mere medical malpractice into **intentional medical battery** and **fraudulent misrepresentation**[8].

95. Strong **Legal Basis & Federal Causes**: With the describe above, when a medical provider

---

[8] **Key Legal Takeaway:** In a formal pleading or complaint to the **Texas Medical Board (TMB)** or the **U.S. Department of Health and Human Services (HHS)**, these facts should be framed not as separate administrative glitches, but as a coordinated breach of the standard of care—where billing concealment masked fraudulent data entry that actively placed a patient's life at risk during an advanced cardiac procedure.

intentionally falsifies medical records, refuses to provide transparent invoices, and operates "off-the-books" to intercept or exploit **Workers' Compensation benefits**, the action elevates from standard malpractice into complex **Federal Fraud→ Federal Civil RICO (18 U.S.C. §§ 1961–1968**, and Civil Conspiracy to Defraud and Conversion of Benefits.

96. **Conclusion**: Plaintiff has demonstrated that Defendant Jennifer Bradford and R.I.C.O. associated actors/ her co-conspirators/ acted willfully, wantonly, and with conscious indifference to the Plaintiff's life and safety. For 17 months, Defendants intentionally withheld the Plaintiff's indemnity Workers' Compensation benefits. Despite knowing the Plaintiff was a permanently disabled worker suffering from advanced heart failure, Defendants engaged in a deliberate medical blockage—including the egregious denial of an approved wheelchair. This forced the Plaintiff to suffer severe physical degradation, including crawling and remaining trapped for hours without mobility. Consequently, the Plaintiff's medical condition has severely degenerated, causing secondary organ failure due entirely to the Defendants' malicious conduct.

## *XII. THE RESULTING LIFE-THREATENING MEDICAL, MOBILITY, AND SURVIVAL BLOCKADES & LOST OF HOMESTEAD/ IMMINENT FORECLOSURE ULTIMATUM*

### (A) LIFE-THREATENING MEDICAL, MOBILITY, AND SURVIVAL BLOCKADES

97. **The Mobility Blockade:** In February and March 2026, national healthcare Electronic Data Interchange (EDI) clearinghouses bypassed the public shell and confirmed active, funded backend coverage under the original DWC No. 25169058. On March 13, 2026, the EDI system cleared and approved Plaintiff's medically prescribed custom **NuMotion Wheelchair (TiLiteAeroX with Motor SmartDrive)**. However, Defendant Jennifer Bradford executed manual database overrides to block physical delivery by anchoring the approval to the pre-denied shadow profile.

98. **Physical Attrition and Cardiovascular Collapse:** For over seventeen (17) months, this artificial blockade has forced an injured worker with a heart failure progressed to "permanently disabled", followed with have to crawl on her hands and buttocks and walk awkwardly on crutches. This forced physical strain mechanically drives severe cardiovascular volume and pressure overloads, causing progressive Left Atrial Enlargement (LAE) and acute ST-Segment Elevation, etc.. As documented chronologically in the medical timeline—ranging from myocardial ischemia at the Mayo Clinic (November 2024), fixed apical/anterior perfusion defects & ST-Segment Elevation, Common internal & external carotid shown intimal thickenings, bilateral internal & external carotid shown intimal thickenings , Bradi-Tarchicardia Syndromes, etc..(January -March 2025), acute metabolic fluid dumping (Oct 2025), and a concussion from a severe floor impact due to unable to walk (Nov.2025), → to recent hypotensive crises of 62/39 mmHg (April 2026)—Plaintiff's surviving myocardial tissue is suffering irreversible structural degradation. **This physical crisis operates alongside an imminent, manufactured foreclosure**

deadline targeting her primary residence after June 14, 2026, chase's exploring foreclosure options.

99. **Exhaustion Fully Excused:** In March 2026, the TDI-DWC Commissioner Ombudsmen advised Plaintiff to submit a formal report to the internal Fraud Unit—the fraud report Plaintiff had repeatedly attempted to secure since early February 2025, only to be blocked by staff who directed her to file standard, non-binding complaint forms. Plaintiff subsequently escalated criminal reports containing contradicted electronic data (**exhibit #** 22) to the TDI Fraud Unit, the Texas Rangers, and the Texas State Auditor's Office, and HHSC. Plaintiff further sought emergency intervention from the United States Attorney's Office for the Southern District of Texas, as a result FBI was a Defendant on Plaintiff's ftca & RICO case, 25-20505/4:24-cv-01231 (*see Roadmap for Interconnected Litigation*). The U.S. Attorney's Office formally responded via official correspondence, explicitly stating that the matter fell under the primary jurisdiction of, and belonged to the Texas State Authorities. Because federal authorities deferred to the state, and state regulatory and law enforcement agencies remain completely paralyzed further administrative reporting is futile, especially state did not have jurisdiction over R.I.C.O..

100. Nevertheless, when Adult Protection Services (APS) mandatory from HHSC contacted Plaintiff around the middle of May 2026 (**exhibit #** 26**, page #** 14), Plaintiff was not able to utilize the service due to conflict of interests. As a result, APS has engaged with the Harris County Constable Precinct 5 (HCCP5), Harris County Mental Health Crisis on defaming Plaintiff having mental illness, "mental health consumer" person since 2021. Especially in 2023 when RICO enterprise medically abused Plaintiff's Dad—swapped Dad's Parkinson Disease medication, Carpedopa Levoda at the Costco Pharmacy,... Plaintiff reached out to APS for help, APS stated that they could not help Dad—who was in the most vulnerable stage much and much more than Plaintiff. Administrative exhaustion is entirely excused as a matter of law under *McCarthy v. Madigan*, 503 U.S. 140 (1992) and *Honig v. Doe*, 484 U.S. 305 (1988).

101. **Imminent Foreclosure and Utility Collapse:** Compounding Plaintiff's severe physical frailty, the continuous theft and conversion of Plaintiff's Workers' Compensation indemnity benefits has reduced Plaintiff to absolute destitution. Plaintiff is currently surviving on a baseline of $298.00 in monthly SNAP benefits, faces immediate municipal water and electrical utility on & off disconnections due to manufactured arrearages, and faces an imminent, up coming foreclosure sale targeting her primary residence set for **after June 14, 2026.**

### (B) THE IMMINENT FORECLOSURE ULTIMATUM AND MANUFACTURED DEFAULT DUE TO INDEMNITY WORKERS' COMPENSATION BENEIFT BLOCKAGE

102. Plaintiff alerts the Court to an **imminent foreclosure** crisis targeting her primary homestead. The lender/servicer, JP Morgan Chase Bank N.A. has issued a strict administrative ultimatum, providing Plaintiff until **June 14, 2026**, to reinstate Plaintiff's mortgage loan, while concurrently "exploring

options" for final foreclosure. As of the date of this filing, a formal *Notice of Acceleration* has not yet been executed, meaning the window to preserve the underlying mortgage contract remains actively viable but critically endangered.

103. **<u>This imminent default is not the result of standard economic hardship; it is a manufactured, premeditated default driven by the core civil RICO enterprise</u>**. The defendants have systematically blocked and diverted Plaintiff's lawful monthly ~ $110,000.00-baseline Workers' Compensation indemnity funds (DWC No. 25169058) for over 17 months, stripping her of the liquidity required to service the note. (prosecuted in 25-20446/4:24-cv-01997, see Roadmap)

104. Furthermore, due to the simultaneous mapping of a fraudulent **"DECEASED"** of Plaintiff's SSN X34-1X-7XX1 within the SSA database, flagged across interconnected federal and financial data streams, the lender's automated administrative matrix effectively treats Plaintiff as a legal non-entity, especially Chase Bank insider also conspired with RICO enterprise to repeatedly filed "foreclosure and bankruptcy" filings against Plaintiff's homestead since August 2022, etc. (*prosecuted in 25-20452/ 4:24-cv-01230, see Roadmap Interconnected Litigations*). Plaintiff has reached out to the U.S. Attorney for assistance, <u>US Attorney advised to look for counsel</u>, whereas this matter will take time and resources from the reinstatement of Plaintiff's stolen INDEMNITY Workers' Compensation benefits. → This creates an absolute information blockade: the lender demands a reinstatement of loan cure by June 14, 2026, (please Roadmap of Interconnected Litigations - Procedural Domino effects...).

105. June 14, 2026 deadline passed without a Temporary Restraining Order to freeze the upcoming foreclosure, whereas the lender will accelerate the note soon, demanding the immediate payment of the entire principal balance. This will lock out any standard cure mechanisms and move the property directly into the 14-day public auction cycle to wipe out **$670,000.00** in hard-earned home equity, causing irreversible physical, medical, and financial destruction.

---

## *XIII. EXHAUSTION OF REMEDIES IS EXCUSED DUE TO SYSTEMIC ADMINISTRATIVE FUTILITY AND DELAY*

106. **Total Failure of the State Administrative Grid:** Plaintiff started to work with OIEC since early February 2025. Plaintiff has exhaustively attempted to utilize formal internal state administrative channels to resolve this escalating crisis, to no avail. On February 14, 2025, Plaintiff filed a formal administrative fraud report directly with the TDI-DWC Audit Compliance Unit, in which was based on the instruction from OIEC's Assistance Manager, Ms. Monica Morales & DWC Commissioner Ombudsman, Mr. Kevin Haywood. This filing explicitly detailed Defendant Jennifer Bradford's active engagement in fraud (Claim Adjuster impersonation), subsequent with in-person following up and urging for escalation in assisting Plaintiff (**exhibit #** 21 ). Following with, Plaintiff discovered the involvement of Defendant Jennifer Bradford's co-conspirators, and

multiple law firms involvement, vs. her the parallel split-file grid framework, synthetic identity fraud, corporate name scrubbing and variation alterations of names, and the illicit diversion of corporate insurance funds, Plaintiff clearly documented and reported to TDI-Compliance / Audit urgently requested for investigation on the emphasized 5 items. → once again agency became "inaction"?

107. Especially on November 24, 2025, at the Contested Case Hearing, Plaintiff Pro-Se and provided to the TDI-DWC Administrative Law Judge (ALJ) about 150 pages of evidences consisted of criminology, red flags of Defendant Jennifer Bradford and her co-conspirators executing the parallel grid fraud, Plaintiff's irreparable damages of heart failure, second fraud SSN, acknowledgement of the carrier that Plaintiff's claim type was a "discovery." Furthermore Plaintiff also provided ALJ and Defendant LeeAnna G. Mask, the carrier intro letter: EWC002, and Optum Pharmarcy Prescription Drug Card (**exhibit # 1**), including the Third Party Injure Causes of some RICO doctor has diagnosed Plaintiff with a series of diagnosed codes, as well as these doctor(s) has been treated Plaintiff with some long term current drug therapy (**exhibit # 1**).

108. **Subsequently, on November 26, 2025, Plaintiff was arranged for being arrested by RICO enterprise, the arrest was not only implicated SSA's retaliation** in relation to 25-20446/4:24-cv-01997 (*described in 4:25-cv-06000, see Roadmap for Interconnected Litigations*), but also the enterprise targeted to falsify the Workers' Compensation's court evidence inside Plaintiff's vehicle by not towing Plaintiff's car when arrested Plaintiff for criminal trespass to the Social Security Administration office on November 26, 2025 (**exhibit # 21, page # 10 to # 13**).

109. Following with on December 8, 2025, TDI-DWC ALJ ignored all red flags, procedural violations and noncompliance matters, become agent inactive, and issue a claim denial for the same reasons of Defendant, Jennifer Bradford has denied in January 2025, "not reported to supervisor within 30 days,... to the division within a year, and not compensable...", regardless numerous red flags among these ~150 pages consisted fraud crimes, abuses of discretion bestowed on an injured worker at the federal levels, across the United States. In addition, ALJ also re-enforced her denial, supported the enterprise network by using the miss-application of law, stating that Plaintiff has "mental trauma" (**exhibit # 23**)...

110. **Regulatory Abandonment and Misdirection / Structural Futility:** The OIEC, Compliance and TDI-DWC has continuously refused to execute its statutory mandate to initiate an investigation or pursue regulatory action. Instead, the agencies shuttled Plaintiff's case aimlessly across internal departments. The TDI-DWC Commissioner's Ombudsman repeatedly provided Plaintiff with false, contradictory, and misleading instructions during formal case inquiries. Concurrently, the OIEC held Plaintiff's active dispute regarding fraudulent actions of Defendant Jennifer Bradford vs. the primary **DWC Claim No. 25169058** and duplicated fraud claim **DWC No. 25183607,** in an administrative standstill for approximately nine (9) months, had the BRC meetings being denied twice, an evidentiary hearing, or

any viable administrative remedy.

111. **Spoliation of the Administrative Record:** Following the total failure of OIEC-- state agency advocacy, Plaintiff assumed *pro se* status and successfully forced a Benefit Review Conference in October 2025. At the assembly, the presiding BRC Officer formally entered into the record that Plaintiff's foundational claim instrument—the original **Form DWC-041** (Employee's Claim for Compensation), which is legally required to initiate jurisdiction—was completely missing from the official state system database, using fraud DWC No. 25183607 **ESTABLISHING CLEAR ELECTRONIC DATA SPOLIATION.**

**(C) REGULATORY INACTION AS THE DIRECT CATALYST FOR ENTERPRISE EXPANSION**

112. **The Weaponization of Administrative Impunity:** The systematic failure and paralysis of the Texas Department of Insurance, the State Auditor, the Texas Rangers, and the federal executive branch did not merely delay justice—it actively weaponized the enterprise. Operating with total perceived immunity since March 2026, the Jennifer Bradford gang aggressively expanded their illicit infrastructure, including using a fraud email domain, esisclaims@tnwinc.com to deny Plaintiff's medical cares (exhibit # 12, page 2).

113. **The Transition to Automated Financial Warfare & Criminal Enterprise and Civil RICO:**

- Realizing that no state or federal investigation/prosecution was executing oversight, the conspirators transitioned from manual identity theft to deploying a highly sophisticated, multi-layered electronic network. They erected a weaponized administrative mirror system designed to completely swallow Plaintiff's civil existence, hide the true nature of her catastrophic myocardial and vascular injuries, and finalize the theft of her home. The unassailable, technical mechanics of this digital trap—and the explicit wire fraud utilized to maintain it—are laid bare in the section below.

- Following a exhaustive investigation supported by evidence establishing fraud beyond a reasonable doubt, Plaintiff has uncovered DEEP-SEATED SYSTEMATIC FLAWS within the TDI-DWC electronic system ("*TXCOMP*"). **The mechanism utilized to manage injured workers' claims has been converted into a criminal enterprise**. This infrastructure executes **DEEP INSURANCE FRAUD AND SYNTHETIC IDENTITY FRAUD** inextricably linked to a broader biometric racketeering pattern, expanded broadly within the Texas Department of Insurance - Division of Workers' Compensation; in which Plaintiff fully documented within a comprehensive 68-pages document administrative appellate brief (**exhibit #** 24 ), establishing clear **RICO Predicate Acts under 18 U.S.C. § 1961.**

114. **Systemic Administrative Collusion and Futility:** Alongside this bad-faith denial, the Office of Injured Employee Counsel (OIEC) engaged in administrative suppression and conspiracy against Plaintiff's statutory rights. OIEC personnel actively insulated Defendant Bradford's actions, stalling Plaintiff's administrative dispute in an artificial standstill for approximately nine (9) months and twice denying

requests for a mandated Benefit Review Conference (BRC), including provided fraud info to Plaintiff deliberately when Plaintiff pro se requested for B.R.C. meet

115. **Administrative Futility and Exhaustion Excused:** Despite being handed irrefutable proof of a parallel digital grid, unauthorized wage statement, and internal database manipulation, procedural violations, the **TDI-DWC Administrative Law Judge and Appeals Panel Judges chose to ignore these red flags, bypassed their own regulatory mandates** (exhibit # 25), **and summarily affirmed the denial** on March 19, 2026. Subsequent, plaintiff submitted a criminal reports escalated to the TDI Fraud Unit, Texas Rangers, Texas State Auditor (**exhibit #** 22), and the U.S. Attorney's Office resulted in zero administrative correction, with federal authorities formally deferring to the state authorities (**exhibit #** 26). Because there's Conflict of interest state regulators and law enforcement are actively paralyzed, and refuse to enforce their own governing rules, further to advancing plaintiff's case to an appropriate federal agency, administrative recourse is entirely futile and legally excused under ***McCarthy v. Madigan*, 503 U.S. 140 (1992).**

116. **Fraudulent Concealment and Tolling:** As a direct result of the state agencies' failure to execute their statutory investigative duties, combined with the active concealment, shadow tactics, and synthetic identities employed by Defendants, Down and Stanford P.C., shadow ACE American Insurance Co., Jennifer Bradford of "*shadow*" ESIS, and Defendant Vicky Bush—"*shadow*" of the insurance carrier's customer service, the full scope of this multi-layered criminal enterprise was completely insulated from discovery. Accordingly, **any applicable statute of limitations must be legally tolled under the Texas doctrine of Fraudulent Concealment and the Discovery Rule until March 2026, when the true nature of the fraud was finally uncovered by Plaintiff [9].**

117. **Judicial and Administrative Indifference:** From November 2025 through February 2026, regardless Plaintiff addressed the criminological matters at the Contested Case Hearing as well as clearly documented within 68-page appeal document seeking TDI-DWC's Panel Judges granting reversal (**exhibit #** 24) the Administrative Law Judge and Texas Workers' Compensation Appeals Panel Judges consciously ignored these explicit procedural red flags (exhibit # 25). They continuously issued summary benefit denials negligently, ignored "***DISCOVERY***" claim type and an "***INDEMNITY***" insurance benefits, as well as applied false information to draw conclusion, bypassed proper evidentiary

---

[9] Plaintiff has identified the exact technical glitch/system flaws of state electronic system, known as ***TXCOMP***, and loop-hole these entities used to pull off this multi-million dollar fraud. **THIS IS A MASSIVE REVELATION FOR PLAINTIFF'S CASE.**

1. In database architecture and state systems like Texas TXCOMP, a massive flaw occurs when a system uses a text name string (like a company name) as a primary key or unique identifier, instead of a locked, immutable number like a Federal Employer Identification Number (FEIN) or National Association of Insurance Commissioners (NAIC) number.

2. Because TXCOMP allowed a simple name variation to act as a primary key, Downs & Stanford, Frances Owings, and Jennifer Bradford were able to create a "shadow" company profile right inside the state's own system. By registry standards:

   **CLAIM A (Real):** "ACE American Insurance Company"

   **CLAIM B (Shadow Clone):** "ACE American Insurance Co."

To the **TXCOMP** computer database, that tiny abbreviation ( "***Company***" vs "***Co.***" ) created a completely separate, secondary file pipeline. They used the shadow name profile to siphon Plaintiff's $115,000.00 baseline indemnity money for 17 months, while using the real name profile to slap Plaintiff with a flat denial and block Plaintiff's wheelchair and cardiologist care.

OIEC issued withdraw letter on October 2, 2025 (exhibit # 17).
adjudication, and failed to afford appropriate administrative assistance, and adjudication to Plaintiff as a pro se litigant with a known permanent disability. They permitted Plaintiff's Heart Failure to progress untreated, causing systemic organ damage, recurrent falls, and volatile swings between severe hypertension and hypotension—despite explicit notations from OIEC Ombudsmen confirming that Plaintiff's heart lacked the physiological power to properly pump blood based on November 2024 and March 2025 EKGs →. **This calculated indifference persisted even after Plaintiff exposed that the underlying coverage denial involved widespread state and federal crimes.**

Consequently, the state's agency inaction deliberately led to
118. forcing a permanently disabled worker to crawl, ambulate with crutches, or lean precariously on household objects, cart due to the malicious withholding of a medically prescribed custom wheelchair shocks the conscience. **Because the state machinery has thoroughly abandoned its statutory duties, this Court must exercise its extraordinary equitable jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to intervene and stabilize the stolen insurance claim to its lawful, full scope.**

119. **The Legal Threshold for Bypassing the State System:** Under established federal jurisprudence, an injured litigant is entirely excused from the doctrine of administrative exhaustion, when the local administrative pipeline operates with structural futility, demonstrates systemic bias, or inflicts unconscionable, systemic delays that threaten immediate, irreversible, and life-threatening harm. *See Honig v. Doe*, 484 U.S. 305, 327 (1988); *McCarthy v. Madigan*, 503 U.S. 140, 146–48 (1992) (exhaustion excused where the administrative body is incompetent to grant meaningful relief or imposes unreasonable or indefinite timeframes).

## *XIV. THE UNASSAILABLE TIMELINE CONTRADICTION / EVIDENTIARY TIMELINE AND LEGAL CONCLUSIONS*

UNASSAILABLE EVIDENCE OF PARALLEL GRID ARCHITECTURE AND WIRE FRAUD:

120. **Electronic Discovery of the Dual-Routing Scheme (February 2026):** In February 2026, Plaintiff utilized the authentic DWC Claim No. 25169058 and Carrier Claim No. 1E01E017457802 to process outstanding hospital, laboratory, and diagnostic billing records. Independent laboratory provider LabCorp submitted billing transactions through **DWC Claim No. 25169058**, which immediately cleared the clearinghouse successfully. Concurrently, the Baylor Scott & White healthcare system submitted billing utilizing **Carrier Claim No. 1E01E017457802**. The electronic data interchange (EDI) confirmed an active, funded, and established Primary Insurance Coverage structure, revealing the following corporate transaction details:

- Insurance Type: "***INDEMNITY***"
- Primary Insurance Plan: "***WORKERS' COMP GENERIC***"
- Guarantor: "***TV10082019CITGO PERTOLEUM COR***"

- Guarantor ID: ***"80281616"***
- Subscriber ID: ***"1E01E017457802"*** (Insurance Carrier's Claim Number)
- Subscriber Name: ***"CITGO PETROLEUM COR*"***
- Subscriber DOB: ***"11/23/1972"*** (Plaintiff's Verified Date of Birth)...

121. **Irrefutable Proof of the Shadow Grid:** Plaintiff has obtained irrefutable electronic confirmation of a parallel shadow grid deployed by Defendants. When an independent diagnostic provider (LabCorp) processed billing using the legitimate **DWC Claim No. 25169058**, the transaction routed under an uncontested employer liability file. Conversely, when the hospital facility processed billing through the secondary **ACE Claim No. 1E01E017457802**, the electronic data network bypassed the public denial file and cleared by returning a hidden, active, and fully funded "Generic Workers' Compensation" profile, exposing the corporate Guarantor ID and Subscriber infrastructure.

122. The following timeline establishes an irreconcilable logical and structural paradox within the Electronic Data Interchange (EDI), and national clearinghouse networks. It conclusively demonstrates that while Defendants maintained a public-facing, [using DWC No. 25183607] administrative "denial" to withhold care from Plaintiff, they simultaneously maintained a live, concealed, operational profile to capture indemnity funding and corporate tax-shelter metrics using Plaintiff's identity [DWC No. 25169058 and a fraud SSN] and true baseline salary of approximately $~110,000.00.

| Date | System Status / Administrative Action | Technical Clearinghouse Metric |
|---|---|---|
| **December 9, 2024** | Form DWC-041 submitted upon discovery of claim. The Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) establishes the original, valid claim under **DWC No. 25169058.** | Clearinghouse system initializes and processes transaction data under legitimate claimant profile **DWC No. 25169058.** |
| **Mid-January 2025** *(~3rd Week)* | ACE American Insurance Company / ESIS transmits introductory notice letter [EWCO] E002, a prescription drug card, and assigns **Carrier Claim No. 1E01E017457802.** [Subsequently,] a secondary, fraudulent shadow profile designated as **DWC No. 25183607** is manufactured approximately 35 days post-original claim. | ACE American Insurance Company records acceptance of the Workers' Compensation claim, technically classifying the file as a "***DISCOVERED***" claim type. |
| **January 30, 2025** | An informal, public-facing notice of denial is issued to Plaintiff and attached exclusively to the second, duplicated claim file (**DWC No. 25183607**), | Public-facing clearinghouse file is administratively restricted, cutting off visible access to income indemnity |

| Date | System Status / Administrative Action | Technical Clearinghouse Metric |
|---|---|---|
| | effectively serving to suppress the formal, statutory denial letter. | benefits and medical care authorizations. |
| Late February 2025 | Without the knowledge or consent of Plaintiff, the employer is quietly requested to complete official payroll, wage, and verification forms. | System captures and processes precise wage calculations predicated on Plaintiff's **~$110,000.00 annual salary baseline.** |
| February 9, 2026 | Hospital Billing Department queries the primary ACE Carrier Claim Number (**1E01E017457802**); the system records an automated transaction acceptance. | Clearinghouse system completely bypasses the public "denied" shell, returning a **LIVE, active, authorized corporate transaction** displaying:<br>▪ Guarantor: **"TV10082019CITGO PETROLEUM CORP"**<br>▪ Guarantor ID: **80281616**<br>▪ Primary Subscriber Name: **TV10082019CITGO PER***, etc.. |
| February 17, 2026 | LabCorp systems successfully clear and process diagnostic testing approvals utilizing the original **DWC No. 25169058**, but find the Carrier Claim Number locked to external view. | Network infrastructure bypasses the administrative "denial" shell, authenticating a live transaction linked directly to the primary legitimate **DWC Claim No. 25169058**. |
| March 13, 2026 | Hospital verification departments pull an Electronic Data Interchange (EDI) response, validating primary insurance coverage for Generic Workers' Compensation under an active **"INDEMNITY"** designation.<br>P.O. Box 6563<br>Scranton, PA 18505<br>Customer Service #: 800-937-7460 | EDI response confirms an active, high-level corporate profile transaction with the following verified database parameters:<br>▪ Plan Type: **Workers' Comp Generic** ✓<br>▪ Guarantor: **TV10082019CITGO PETROLEUM CORP.** ✓<br>▪ Guarantor ID: **80281616** ✓<br>▪ **Subscriber ID: 1E01E017457802** ✓<br>▪ Subscriber Name: **CITGO PETROLEUM COR*...**<br>▪ Subscriber DOB: **11/23/1972** (Plaintiff's true DOB) ✓<br>▪ **Insurance Type: INDEMNITY** ✓ |
| March 13, 2026 | NuMotion Insurance Specialist submits electronic verification for the prescribed custom wheelchair; the system records an immediate, unhindered transactional approval. | Clearinghouse registers automated network approval for medical equipment distribution under the active indemnity routing profile. |

| Date | System Status / Administrative Action | Technical Clearinghouse Metric |
|---|---|---|
| **March 17, 2026** | NuMotion's Assistive Technology Professional (ATP) Technician formally confirms that the Workers' Compensation insurance has cleared verification and approval, establishing a delivery window of approximately 30 days. | Back-end electronic authorization remains fully intact, confirming funding availability for the prescribed custom apparatus. |
| **April 8, 2026** | A RICO actor identifying herself as "Destinie F." impersonates a NuMotion National Customer Service Representative, falsely informing Plaintiff that Defendant Jennifer Bradford issued a denial on April 7, 2026. | Intercept actions are taken outside the standard automated clearinghouse channels to manually halt physical equipment fulfillment. |
| **April 14, 2026** | Plaintiff contacts the local NuMotion facility in San Antonio, Texas, and is informed that the wheelchair order was formally marked as denied on April 9, 2026. This timeline gap exposes a severe, bad-faith operational inconsistency designed to obscure intentional interference. Plaintiff transmits the active EDI clearinghouse coverage data to Insurance Specialist Hillary Duran and NuMotion Executive Curtis Watkin; both corporate officers maintain a strict wall of silence. | Manual, bad-faith override commands are executed within the vendor's internal database to force-cancel an electronically approved, life-sustaining medical device order, completing the act of physical and legal attrition. |

---

### (D) DATA MATRIX EVIDENCE SATISFIES FACTOR #1

123. To establish a substantial likelihood of success on the merits, a movant must present objective evidence showing a *prima facie* entitlement to relief under the governing substantive law. → **The technical data matrix set forth in the above Section E & F crosses this threshold definitively. This <u>timeline presents an irreconcilable electronic reality that completely destroys the legal validity of Defendant Jennifer Bradford's January 30, 2025 public-facing denial shell</u>.**

124. Under **Texas Labor Code § 408.021**, ACE American Insurance Company's formal logging of Plaintiff's DWC-041 as a valid, "***Discovered***" claim type under **DWC No. 25169058** activated an absolute, lifetime statutory right to medical care. (exhibit #4, page 7). Additionally on P.#3 of exhibit #4, an introduction email from CHUBB's AVP Claims Compliance also support this **data matrix which proves that this policy is fully mature and functional on the back-end infrastructure,** as evidenced by the following objective system responses: (exhibit #27, page #2)

(i) ▶ On February 9, 2026: Baylor Scott & White coded Plaintiff as "self" pay

(ii) **February 13, 2026:** Baylor Scott & White Hospital's billing query successfully cleared the primary Carrier Claim Number (**1E01E017457802**), bypassing the public "denied" shell to return a live transaction, on indemnity Workers' Compensation Benefits (exhibit #27, page #3).

(iii) **February 17, 2026:** LabCorp successfully processed diagnostic testing approvals using the original **DWC No. 25169058.**

(iv) **March 13, 2026:** A formal Electronic Data Interchange (EDI) transmission pulled an active **"INDEMNITY"** insurance type displaying verified database parameters—including **Guarantor ID: 80281616 (CITGO Petroleum Corp)**, Subscriber ID: **1E01E017457802**, and Plaintiff's DOB: 11-23-1972...

(v) March 2, 2026: Medicall conducted a 40-page Utilization Review, Defendant J. Bradford's Irrefutable admission by Conduct, please see Section (XV) below.

125. Based **strictly on this electronic timeline, → A FATAL LEGAL PARADOX IS ESTABLISHED:** Workers' Compensation claim cannot be legally "denied" and "closed" to a human claimant while it simultaneously generates live corporate transaction approvals, captures exact employer wage form calculations based on a **~$115,000.00 salary baseline,** and clears electronic database verification for a custom wheelchair provider. **NuMotion's Insurance Specialist formally verified and approved the order on March 13, 2026, and an Assistive Technology Professional (ATP) Technician verbally in-person re-confirmed network approval on March 17, 2026.**

126. Federal **Wire Fraud and Conversion (18 U.S.C. § 1343):** A Workers' Compensation claim cannot be legally "***denied***" and "***closed***" to a human claimant while it simultaneously generates live corporate transaction approvals and clears funding for a custom wheelchair on the backend. This data matrix provides objective proof that **Defendants are caught red-handed utilizing Plaintiff's valid claim and true birthdate on the backend to maintain an active corporate indemnity vehicle, while executing bad-faith manual overrides to cut off the physical delivery of an approved, life-sustaining medical device and medical cardiac cares... →.** This constitutes continuous **Federal Wire Fraud under 18 U.S.C. § 1343.** please see form CS-11 of exhibit #10, page 2.

127. **This is not an opinion or a speculative allegation; it is an unassailable digital paper trail.** The timeline records prove a parallel "split-file" operation, which was construtively and tatically strategized from the begining in December 2024 after TDI-DWC recieved Plaintiff's DWC041, to support Rico's biometric racketeering, to cut off Plaintiff's survival sources & life-sustaining medical cares. **Because the electronic records confirm the underlying insurance coverage is active and operational, Plaintiff's probability of prevailing on the merits is exceptionally high.**

## XV. *THE "FACT TRAP": DEFENDANTS' IRREFUTABLE ADMISSION BY CONDUCT* (exhibit #15)

128. **The Weaponization of Strategic Disproportionality:** The Defendants argue before justice that

DWC No. 25183607

Plaintiff's original, state-approved Workers' Compensation claim (**DWC No. 25169058**) is dead, non-compensable, or legally nonexistent. If that premise were true, an insurance carrier would deploy its standard, automated, zero-cost administrative notice stating: *"No coverage exists; claim: denied/closed* Instead, the Defendants' actual conduct reveals a calculated pattern of selective, weaponized administrative delays and swift denials designed to induce a total collapse of the claimant -- plaintiff after Plaintiff fail and only able to complete ~80% of functional evaluation

(i) **The Immediate Denials (Life-Critical Care):** When Plaintiff requested authorization for critical primary care (PCP) and life-saving cardiology treatments to address severe cardiovascular degradation, Defendant Adjuster Jennifer Bradford issued blanket denials **within one (1) minute, via informal email channels,** completely bypassing the statutory requirement for a thorough, good-faith investigation.

(ii) **The Corporate Mobilization functional ($250.00 Evaluation):** Conversely, on March 2, 2026, when a physician-ordered physical disability evaluation costing exactly **$250.00** was submitted, Defendant Bradford did not issue a verbal or routine email denial. Instead, Defendant J.B./ESIS took the extraordinary step of expending substantial corporate capital to formally retain **MediCall (A Cognizant Company)**—a multi-billion-dollar Fortune 500 medical management corporation—to execute a formal, statutory **Utilization Review (UR),** (exhibit # 15).

129. **The Legal Architecture of a Utilization Review:** A Utilization Review is not an informal email or a routine customer service denial. It is a highly regulated, statutory administrative mechanism under Texas Insurance Laws.

**The Jurisdictional Rule:** An insurance carrier possesses **zero legal standing**, zero statutory authority, and zero financial justification to conduct a formal Utilization Review on a claim that is denied-> genuinely dead, closed, or nonexistent. (ALJ denied/closed on December 8, 2025).

By law, a Utilization Review can only be initiated to modify, approve, or deny treatment requests within a **live, active, and funded policy matrix.** An insurer cannot legally audit or peer-review medical necessity for an entity it does not insure or for a claim it has fully discarded.

130. **Proof of Malicious Intent to Sabotage the Federal SSDI Safety Net** in one (1) minute denying PCP's care (exhibit # 13),

This gross disproportion—denying emergency, cardiac care, in minutes, via email, while spending thousands of dollars in corporate vendor Medicall fees to block a $250.00 $269.00 clinical evaluation—completely unmasks the Defendants' **bad-faith intent.**

This was not a reasonable exercise of cost-containment; it was a targeted tactical ambush designed to cut off alternative financial relief. This specific $250.00 evaluation fees was explicitly prescribed to quantify the Plaintiff's physical impairments so her PCP could complete the vital **Functional Disability Report** required for her pending **Federal Social Security Disability Insurance (SSDI)** application. (exhibit # 15, pages 2, 3, and 4)

**By deploying MediCall to intervene after Plaintiff had already completed 80% of the testing, Defendant Bradford successfully coerced the clinic into withholding the final report. The strategic purpose was clear:**

- To systematically suppress objective medical evidence of permanent physical impairment.
- To block the Plaintiff from accessing alternative federal safety nets, keeping her entirely dependent on a compromised system.
- To force total financial and biological attrition before the June 14, 2026 foreclosure deadline.

131. **The "Smoking Gun" Conclusion for the Court:** This Court must look at the active operational status of the claim, not the artificial paper denials generated by Defendant Bradford. → An insurance carrier does not buy a sledgehammer from a multi-billion-dollar medical review corporation to crack a nut, unless they are desperately trying to conceal the fact that the underlying tree belongs to them. **Exhibit #15** operates as an irrefutable admission by conduct: **the core insurance claim is active, valid, and generating internal credits behind the scenes.** The administrative blockades are a manufactured illusion designed to induce a total collapse of the claimant prior to trial.

## ***III. THE BIOLOGICAL REALITY: INTENTIONAL ATTRITION RESULTING IN PHYSICAL COLLAPSE***

132. **The Clinical Breakdown and Physical Collapse:** The true, devastating malice of the Defendants' administrative blockade is laid bare by what occurred inside that clinic. Plaintiff was not seeking to evade evaluation; she aggressively attempted to comply with Plaintiff's Primary Care Physician's medical order so that Plaintiff's PCP can complete the physician statement for SSDI application. However, because the Defendants had spent the preceding weeks systematically denying Plaintiff life-critical cardiology & PCP's care, Plaintiff's cardiovascular system was left completely unmanaged, unstable, and exposed to profound hemodynamic stress.

- **The 10-Pound Threshold:** After enduring about 80% of the grueling functional/Physical evaluation testing, Plaintiff was instructed to lift and carry a mere **10-pound object**—a weight equivalent to a standard gallon of milk.
- **The Systemic Failure:** Under this minimal physical exertion, Plaintiff's unmanaged, degraded cardiovascular system experienced an immediate, acute crisis. Her body completely failed,

and she **collapsed**

**132. THE WEAPONIZATION OF THE COLLAPSE BY THE INSURER → What did Defendant Adjuster Jennifer Bradford and her multi-billion-dollar hired vendor, MediCall, do in response to a human being physically collapsing during a medical evaluation?**

- Instead of treating this collapse as a definitive, catastrophic clinical proof of permanent physical impairment, the Defendants used the chaos of the medical emergency to execute their final ambush. They immediately injected **defamatory psychological pretexts,** mental ambushes to escape libility, physical disability... was evidence of a "**mental illness**" / non-compliance.
- They used the panic of the collapse to pressure the local physical therapy clinic into **withholding the written evaluation report entirely**. They took the data from a literal physical collapse and locked it away so that Plaintiff's PCP could not use it to finalize her Federal SSDI application.

**THE PT EVALUATION AMBUSH MATRIX**

| INSURER'S FRAUDULENT PRETEXT | ACTUAL CLINICAL REALITY |
|---|---|
| ➢ PCP already certified "permanent disability"<br>➢ PT ordered to quantify metrics for Federal SSDI application's Functional Report<br>➢ Patient physically COLLAPSED after lifting only 10 lbs. | ➢ Mobilized a Fortune 500 TPA MediCall to intercept data<br>➢ Exploited physical collapse to inject psychological slurs.<br>➢ Coerced clinic into hiding the 80% completed test data |

## IV. *THE ANATOMY OF THE "Mental Illness" Ambush from Medicall*

133. **The Fact of Pre-Existing Medical Certification:** To be clear, Plaintiff's primary care physician had **already issued a formal, legal certificate of permanent disability** on February 17, 2026 (exhibit # 20). The underlying medical diagnosis of total disability was already established in Plaintiff's clinical record. However, because a standard primary care clinic lacks the specialized industrial testing apparatus required to mathematically quantify specific physical tolerances—such as exact push/pull poundage, amount of pounds Plaintiff can lift up and sitting/standing time limits—the PCP issued a formal medical order directing Plaintiff to an specialized physical therapy facility. This was done for the sole purpose of gathering the objective,

quantitative metrics required to complete the **Functional Disability Report for Plaintiff's pending Federal SSDI application.** (exhibit # 15, page # 2-4).

134. **The True Purpose of the Insurer's Intervention:** This context also transforms Defendant Jennifer Bradford's actions from standard administrative review into active, malicious interference with a federal benefits application:

- **The Goal was Evidence Suppression:** Defendant Bradford did not engage MediCall to evaluate whether Plaintiff was injured; she engaged them because she knew that if those physical therapy measurements were recorded, the Plaintiff would possess unassailable, mathematically precise proof of permanent impairment for the federal government.
- **The Manipulation of the Clinic:** By launching a hostile corporate Utilization Review after Plaintiff had already endured and completed **80% of the grueling functional/ physical testing**, the insurer successfully panicked the local clinic. They weaponized an administrative mechanism to coerce the facility into withholding the final data packet, leaving the PCP's federal functional report incomplete.

135. **The Ultimate Contradiction for the Court:** This Court must ask itself: If this claim were truly "dead," why would an insurance adjuster care if an injured worker failed a physical therapy test? Why would they bother to hire a multi-billion-dollar corporation to swoop in and defame a claimant who had just physically collapsed?

➔ **The answer is clear:** The Defendants knew that a physical collapse under a 10-pound load, documented in a formal report, would establish an **unassailable record of total permanent disability.** It would completely expose the fraudulent nature of the immediate, "within-minute" denials Jennifer Bradford had been issuing via email. They had to suppress the report of that collapse at all costs, to force the Plaintiff into total financial and biological surrender before the upcoming legal deadlines.

## V. *CONCLUSION: TIMELINE EVIDENCE SATISFIES A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS*

136. To establish a substantial likelihood of success on the merits, Plaintiff is not required to prove her case in full today; rather, Plaintiff must present a clear *prima facie* case showing an entitlement to relief under the applicable substantive law. *See Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013). The objective, unassailable Electronic Data Interchange (EDI) timeline set forth in the above Section XIV (***Unassailable Evidence Of Parallel Grid Architecture And Wire Fraud***) & Data Matrix Evidence, ***Timeline Contradiction / Evidentiary Timeline***, as well as the Defendant Medical's "fact trap" crosses this threshold definitely.

137. The underlying substantive law—**Texas Labor Code § 408.021**—mandates an absolute, lifetime statutory right to medical care the moment a compensable injury occurs. The back-end clearinghouse metrics prove that this liability has already been finalized on the corporate ledger. The network responses pulled by Baylor Scott & White Hospital's billing Dept. using the Carrier Claim No. 1E01E017457802 confirm an <u>**ACTIVE**</u> **"INDEMNITY"** status, fully connected to a live corporate billing vehicle (**Guarantor ID: *"80281616"*, Subscriber Name: "*CITGO PETROLEUM CORP**", Subscriber ID: *"1E01E017457802"*** (ACE American Insurance Company's Claim Number). (please see exhibit # 27, page # 3)

138. **<u>This back-end electronic reality completely destroys the legal validity of Defendant Jennifer Bradford's public-facing January 30, 2025 "denial</u>". A claim cannot be legally "denied" and "closed" to a disabled worker while it simultaneously generates live corporate transaction approvals, captures accurate wage calculations based on an exact ~$110,000.00 baseline,** and clears electronic funding for a custom NuMotion wheelchair on March 13 and 17. 2026. Especially Medicall's Utilization Review could only be initiated on a live, active and funded policy matrix.

139. This irreconcilable paradox **IS NOT A MATTER OF OPINION OR SPECULATIVE INTERPRETATION; IT IS AN OBJECTIVE DIGITAL PAPER TRAIL.** → The data proves a "split-file" framework where Defendants have actively separate-routed Plaintiff's real-time identity attributes, and fraud SSN to capture corporate underwriting metrics (DWC No. 25169058) while manufacturing a secondary shadow shell (**DWC No. 25183607**) to externally bar Plaintiff from receiving life-saving medical care.

140. Because the network records confirm that the policy is fully mature, active, and currently paying out corporate allocations on the backend, <u>Plaintiff has demonstrated a certain probability of success on Plaintiff's underlying claims of unlawful conversion, statutory breach, and civil fraud</u>. → Whereas Defendants: Jennifer Bradford, Vicky Bush and her co-conspirators directly triggering extreme, life-threatening myocardial pressure overloads for a duration of over ~ 1 years progressing to Left Atrial Enlargement. Especially the Defendants: Jennifer Bradford, Vicky Bush and their co-conspirators still willfully as conscious and recklessly continue to force a permanently disabled worker with terminal heart failure to endure ~ 17 months administrative delays, while being denied a medically prescribed wheelchair causes immediate, irreversible myocardial tissue degradation. → **this intrinsically matter constitutes a reckless disregard for human life** that satisfies the statutory definitions of causing **Serious Bodily Injury under 18 U.S.C. § 1347.**

## XIX. CATASTROPHIC, IRREVERSIBLE MEDICAL ATTRITION

141. **Irreparable Physical Attrition and Constitutional Deprivation:** While the OIEC and TDI-DWC maintained their 9-month administrative paralysis, Plaintiff's physical body suffered catastrophic, irreversible medical attrition. Forcing a permanently disabled patient to wait indefinitely on a broken state administrative apparatus while enduring severe, unmonitored, and untreated clinical conditions constitutes a profound violation of Due Process and an immediate threat to human life. Plaintiff's verified medical records reveal a cascading series of diagnosed pathologies left entirely untreated since January 2025 → leading to Left Atrial Enlargement, concussion, weakening of chronic injured leg, multiple falls, etc. (**exhibit # 19**), and "**permanent disabled**" diagnosed in February 2026 , due to Defendants' benefits suppression.

142. On the top of that, the on going Systemic Inflammation and Metabolic Failures: Multi-systemic diagnostic profile captured within Plaintiff clinical laboratory records below. These tracking entries confirm that the systematic withholding of approved medical treatments and mobility infrastructure has forced Plaintiff's body into a state of cascading metabolic and cellular degradation. Plaintiff's active clinical diagnoses / charts are permanently flagged with the following severe diagnostic indicators (**exhibit # 1**):

- "**Z79899 ( other longer term (current) drug therapy**"), but Plaintiff has no knowledge of whose doctor has been treating Plaintiff, and what exact long term drugs have been treating Plaintiff... (Plaintiff found these on Dr. John Isaac's lab work order, that these RICO enterprise share among physicians through Quest Diagnostic 360 Care, and planned to seek for help from Dr. Isaac on March 10, 2025's assessment result review and treatment appointment, but RICO enterprise had Plaintiff arrested on the way driving to the appointment, followed with Plaintiff was being wrongful discharged without reason (**exhibit # 7**).
- **ICD-10 Code R79.82 (Elevated C-Reactive Protein [CRP]):** Documenting a state of chronic, fulminate systemic inflammation directly impacting her vulnerable cardiovascular architecture.

- **ICD-10 Code R74.9 (Abnormal Serum Enzyme Level, Unspecified):** Revealing profound cellular-level stress and potential tissue necrosis.
- **ICD-10 Code R79.89** (Other Specified Abnormal Findings of Blood Chemistry): Confirming systemic homeostatic disruption.
- **ICD-10 Code E03.9** (Hypothyroidism, Unspecified)
- **Code E78.2 (Mixed Hyperlipidemia):** Documenting endocrine and severe lipid clearance failures.
- **ICD-10 Code R73.09** (Other Abnormal Glucose) & Code E78.89 (Other Lipoprotein Metabolism Disorders): Demonstrating structural metabolic collapse.
- **Etc..**

**(ii)** The Interception of the Cardiology Lab Order Verification: The operational intersection of this metabolic breakdown and the enterprise's criminal conspiracy occurred directly on the morning of March 10, 2025. Plaintiff's attending cardiologist had issued a specialized laboratory testing and result-assessment order designed to evaluate these exact, compounding pathologies, as well as the active ICD-10 Code Z79.899 (Other Long-Term Current Drug Therapy) that had been planted inside her file.

**(iii)** Severe Cardiac Pathology and Myocardial Injury: Baseline Cardiac Indications (exhibit #1, page 7) with Sinus Rhythm, T-Wave Abnormalities, Premature Supraventricular Complexes (SVCs) which rapidly degenerated into an Acute ST-Segment Elevation indicating active myocardial injury; T-Wave Inversion (TWI); Premature Atrial Contractions (PAC); severe heart rate volatility; BLE with discoloration; abnormal Nuclear Stress Test with: apical and anterior perfusion defects, common internal & external carotid shown intimal thickenings, bilateral internal & external carotid shown intimal thickenings, Brady-Tachycardia Syndrome diagnoses → Septal T-Wave Abnormality. (exhibit #19).

**(iv)** Vascular Degradation: Common internal & external carotid shown intimal thickenings (exhibit #1, page 16) bilateral internal & external carotid shown intimal thickenings, and a formal diagnosis of Brady-Tachycardia Syndrome accompanied by Septal T-Wave Abnormalities and Borderline EKG readings.

(iv) October 2025 (Acute Metabolic and Fluid Dysregulation): Plaintiff experienced severe fluid retention anomalies where ingested fluids were excreted entirely within 5 to 15 minutes (rapid diuresis), accompanied by the intermittent onset of pink- and light lime green-colored urine, pointing to an acute disruption of the antidiuretic hormone (ADH) pathways or profound metabolic instability.

(v) November 2025 Escalation (Baylor Scott & White ER): Following a severe fall onto a concrete floor due to her right injured leg giving out, Plaintiff suffered a concussion, localized swelling, blurred vision, intense headaches, and increased chest pain. Emergency Room EKGs detected possible Left Atrial Enlargement (LAE) dilation with an elevated heart rate of 97 bpm and a respiration rate of 27, resulting in an emergency referral to an Electrophysiologist.

(vi) January 2026: Plaintiff excreted brown-colored urine for the first time, accompanied by intermittent episodes of cognitive confusion and severe spatial/directional disorientation (e.g., confusing left vs. right, and the "#" sign vs. "*")...

(vii) **February 2026 (Emergency Room):** Repeat EKGs confirmed progressive Left Atrial Enlargement (LAE). A Troponin 3-Interval Test was conducted, and an undisclosed heart failure medication was administered intravenously via IV by Medic...

(viii) **March 2026:** Plaintiff excreted brown-colored urine for a 2nd time, multiple falls & collapsed.

(ix) **Secondary Trauma and Mobility Deprivation:** Because these conditions remained untreated, Plaintiff's chronically injured leg underwent progressive weakening and complete neuromuscular freezing (frequently requiring external thermal saturation at 89°F or hot water immersion to regain temporary baseline function). This physical collapse induced multiple severe falls, unable to walk → causing head-to-floor impacts resulting in a diagnosed concussion, progressive "Left Atrial Enlargement", and a recent critical blood pressure drop to critically dangerous hypotensive levels of 62/39 mmHg.

## E. CAUSES OF ACTION *

### *I. COUNT # 1: VIOLATION OF THE CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) → 18 U.S.C. §§ 1961–1964 — CONDUCT OF AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY*

143. **The Enterprise:** Defendants Jennifer Bradford, Vicky Bush, ESIS Inc., ACE American Insurance Company, and associated corrupt insiders within state agencies constituted an ongoing, interconnected "**association-in-fact**" enterprise within the meaning of 18 U.S.C. § 1961(4). This enterprise shares a common purpose: to utilize synthetic identity manipulation and parallel data-split architectures to intercept, withhold, and convert high-value Workers' Compensation indemnity

* As a result, plaintiff's civil matters has transitioned into criminals, properly citing causes of actions is required counsel to Replead.

benefits and medical funding streams for their own corporate and personal enrichment. Under ***Boyle v. United States*, 556 U.S. 938 (2009)**, this enterprise possesses an ascertainable structure, direct relational intersections, and sufficient longevity to achieve its fraudulent objectives.

144. **The Exposure Ignored:** As established in Plaintiff's **68-page Appeal Doctrine filed on January 20, 2026**, the enterprise expanded its operations by weaponizing the structural flaws of the TXCOMP database to systematically convert and absorb Plaintiff's **$110,000.00** annual baseline indemnity benefits. This pattern explicitly relied on the covert execution of forged financial instruments, specifically **Form DWC-003**, generated ~ 37 days after the true claim to suppress her wage baseline. Pursuant to ***Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1885)**, Plaintiff is entitled to bring this action for treble damages and immediate injunctive relief for the severe financial and property injuries sustained.

145. **This enterprise shares a common purpose**: to systematically strip financial assets, manipulate insurance data fields, and convert high-value Workers' Compensation ***"INDEMNITY"*** benefits belonging to Plaintiff-- a permanently disabled claimants.

146. **Pattern of Racketeering Activity:** Defendants conducted and participated in the conduct of the enterprise's affairs through a continuous pattern of racketeering activity under 18 U.S.C. § 1961(5). The predicate acts, which extended over a multi-year period and pose a distinct threat of continuity, include multiple, coordinated instances of:

(i) **Wire Fraud (18 U.S.C. § 1343):** Utilizing interstate electronic networks and national Electronic Data Interchange (EDI) healthcare clearinghouses to transmit fraudulent data packets, alter electronic text strings, and deploy automated medical denial blocks. **Wire Fraud (18 U.S.C. § 1343):** Transmitting fraudulent digital data over interstate healthcare EDI clearinghouses to split Plaintiff's identity profile, suppress medical authorizations, and deploy artificial intelligence voice-routing software to intercept Plaintiff's emergency communications to federal agencies (including the IRS), allowing enterprise conspirators to impersonate federal agents (such as "Ms. Bailey") and bury identity theft reports, and, abuse Plaintiff filing tax by stating continued to IRS ran behind & wait.

(ii) When the medical practice used electronic systems (the Patient Management System) and the U.S. Mail to hide invoices, submit false billing to the Workers' Compensation carrier, and manipulate patient records, they have engaged in a pattern of racketeering activity.

(iii) **The "Stealing" Mechanics:** Medical providers commit RICO violations when they engage in **Upcoding** (billing for a more expensive test than performed), **Unbundling**, or billing the Workers' Compensation insurer for procedures under false administrative entries while denying the patient's right to see the matching invoices.

(iv) **Federal Wire Fraud (18 U.S.C. § 1343):** Transmitting fraudulent data or fabricated emergency contacts via electronic healthcare systems to maintain an illicit billing cycle constitutes federal wire fraud, which acts as a predicate act under RICO.

(v) **Mail Fraud (18 U.S.C. § 1341):** Systematically intercepting, suppressing, and diverting Plaintiff's official federal and state administrative mail to maintain an informational embargo and prevent the detection of their backend financial operations. Utilizing interstate mail and electronic documentation systems to issue fraudulent "obsolete" designations and un-audited verbal denials to prevent regulatory detection.

(vi) **Injury to Property and Business**: As a direct and proximate result of Defendants' racketeering enterprise, Plaintiff has suffered severe, quantifiable injury to her property interests, including the unlawful conversion and absorption of her $110,000.00 baseline salary indemnity benefits, out-of-pocket medical expenditures (including a $2,740.00 money order + payments borrowed from a friend to retain her independent cardiologist, Dr. John Isaac), and the imminent foreclosure of her home. Pursuant to Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), Plaintiff is explicitly entitled to bring this private civil action for treble damages and injunctive relief independent of prior criminal convictions.

(vii) **Aggravated Identity Theft (18 U.S.C. § 1028A):** Knowingly, and without lawful authority, utilizing a fraudulent, secondary Social Security Number generated by an SSA insider on November 15, 2023, alongside an unauthorized forged Form DWC-003, to facilitate the underlying wire and mail fraud schemes.

(viii) **Money Laundering (18 U.S.C. § 1956):** Knowingly conducting financial transactions involving the proceeds of specified unlawful activity—specifically, routing Plaintiff's **$115,000.00** annual baseline indemnity asset streams through a hidden "ghost" profile assigned to the alias "Van Trinh" to conceal and disguise its true source and ownership.

147. **Proximate Injury:** As a direct and proximate result of this racketeering pattern, Plaintiff has suffered concrete, severe injury to her business and property, including the total conversion of her baseline insurance income, the accumulation of forced medical debts, and the severe impairment of her unique legal assets. Defendants are liable for treble damages, costs, and statutory attorney's fees under 18 U.S.C. § 1964(c).

148. In ***Boyle v. United States***, 556 U.S. 938, 946 (2009), the Supreme Court ruled that a RICO enterprise does not require a rigid, formal, or hierarchical structure. Rather, it requires an "association-in-fact" enterprise characterized by at least three structural features: a common purpose, relationships among those associated, and longevity sufficient to permit these associates to pursue the enterprise's purpose. Here, the defendants formed an informal, parallel network utilizing unauthorized communications-routing mechanisms, and a parallel data-split architecture within the TXCOMP system to manipulate database profiles, suppress medical text-strings, and divert Plaintiff's assets into syndicate-controlled accounts.

149. Furthermore, the Supreme Court confirmed in ***Sedima, S.P.R.L. v. Imrex Co.***, 473 U.S. 479, 493 (1885) that private individuals are explicitly authorized to bring civil RICO lawsuits for treble damages and injunctive relief caused by a pattern of racketeering activity (such as mail fraud under 18 U.S.C. §

1341 and wire fraud under 18 U.S.C. § 1343), completely independent of whether the defendants have been criminally convicted first.

### ✓ II. ***<u>COUNT # 2</u>: RECKLESS DISREGARD CAUSING SERIOUS BODILY INJURY → 18 U.S.C. § 1347 / THRESHOLD STANDARD & TEXAS COMMON LAW TORT OF OUTRAGE***

150. **The Standard:** 18 U.S.C. § 1347 prohibits knowingly and willfully executing a scheme or artifice to defraud any health care benefit program, or to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services. Subsection (a)(1) escalates the offense if the violation results in serious bodily injury.

151. **Application:** To intentionally DENIED PLAINTIFF'S CARDIOLOGIST CARES, intercepted and canceled Plaintiff's prescribed custom power wheelchair (NuMotion TiLiteAeroX with Motor SmartDrive), while also knew Plaintiff has a chronic injured leg. Defendants acted with full knowledge that this cancellation would force a permanently disabled patient with multiple falls to crawl on her hands and buttocks or use destabilizing crutches. Th<u>is extreme, outrageous conduct exceeds all bounds of human decency</u>. The mechanical strain of crawling has directly triggered severe, life-threatening myocardial pressure overloads, progressive Left Atrial Enlargement (LAE), and documented hypotensive crises (dropping to 62/39 mmHg in April 2026), organ degradation, and a critical stroke risk—<u>constitutes a reckless, bad-faith disregard for human life that satisfies the statutory definition of causing **Serious Bodily Injury under 18 U.S.C. § 134.**</u>

152. Federal jurisprudence firmly recognizes that severe, life-threatening medical decline and the intentional deprivation of essential medical care constitute the absolute definition of irreparable harm. In ***Mainstream Loudoun v. Board of Trustees of the Loudoun County Library, 2 F. Supp. 2d 783, 793 (E.D. Va. 1998),*** **the court established that where a <u>Plaintiff faces an immediate threat to life or severe, irreversible physical health decline, the "irreparable harm" requirement for a Temporary Restraining Order /Mandatory Preliminary Injunction is fully satisfied.</u>** Post-trial monetary relief cannot resurrect a decedent or reverse permanent myocardial tissue degradation. This intentional, **extreme conduct exceeds all bounds of human decency**, satisfies the federal statutory thresholds for causing **Serious Bodily Injury under 18 U.S.C. § 1347**, and has directly caused irreversible biological collapse and extreme emotional distress.

153. Finally, in ***Shay v. Walters***, 61 F.3d 998, 1001 (1st Cir. 1995), the court confirmed that a Court is fully empowered to grant an immediate, emergency *EX PARTE* Order if the Plaintiff presents clear, objective evidence proving that waiting for a standard, noticed evidentiary hearing will result in physical destruction, extreme suffering, or death before the opposing party can respond. The medical data submitted herein **demonstrates that the physical attrition of crawling causes active myocardial tissue death on a daily basis, making even the briefest administrative delay a direct threat to Plaintiff's survival.**

## III. ***COUNT # 3: CIVIL LIABILITY FOR RIGHTS VIOLATION AND MAILING EMBARGO → VIOLATION OF THE TEXAS THEFT LIABILITY ACT (TTLA)/ TEXAS CIVIL PRACTICE & REMEDIES CODE § 134.001 ET SEQ. AND TEXAS PENAL CODE § 31.03***

154. **The Statute:** Under the TTLA, a person who commits theft (as defined by the Texas Penal Code) is civilly liable for the damages resulting from the theft, alongside statutory statutory awards and attorney's fees. Texas Penal Code § 31.03 defines theft as the unlawful appropriation of property or services with intent to deprive the owner of property without the owner's effective consent.

155. **Application to Plaintiff's Case:** Defendants knowingly and willfully committed civil theft of Plaintiff's personal identity profile, insurance asset codes, and statutory Workers' Compensation indemnity streams under active ***DWC Claim No. 25169058***. By involving in deploying a synthetic identity model that matched the name "***Van Trinh***" to an unauthorized ***secondary SSN***, to siphon the cash flow. While mapping Plaintiff's true SSN: ***X3x-1x-7xx1*** and Plaintiff's legal name "***Van Thi-Hanh Trinh***" to a FRAUD ***DWC NO.: 25183607***, outrageously conducted Plaintiff's trade-related personal assets and statutory Civil Rights. → Plaintiff is entitled to a permanent injunction nullifying the fraudulent secondary claim profile (**FRAUD DWC NO.: 25183607**), an order restoring all past-due indemnity checks, and actual/ statutory damages under the TTLA.

## IV. ***COUNT # 4: CIVIL VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT CIVIL VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (CFAA) → 18 U.S.C. § 1030(A)(4) AND § 1030(G)***

156. **The Statute:** The CFAA penalizes anyone who knowingly and with intent to defraud accesses a "protected computer" without authorization, or exceeds authorized access, and by means of such conduct furthers the fraud and obtains anything of value, causing an aggregated loss of at least $5,000.00 or causing the modification or impairment of medical examinations, diagnosis, or treatment.

157. **Application to Plaintiff's Case:** Defendant Jennifer Bradford (Fraud Claim Adjuster for ESIS, acting as the Third-Party Claim Adjuster for ACE American Insurance Company, Inc.), alongside her co-conspirators, utilized internal electronic claims networks, banking databases, and underwriting interfaces—which constitute "protected computers" under 18 U.S.C. § 1030(e)(2)(B)—to execute an information embargo. While Defendants had authorized access to input standard data for Plaintiff's true claim (Van Thi-Hanh Trinh), they knowingly exceeded their authorized access by injecting a synthetic identity configuration ("Van Trinh"), inserting an unauthorized secondary SSN, and deploying "fraud game shell" of "DWC No. 25183607" status flag across electronic data streams. This computer abuse directly triggered the statutory thresholds under 18 U.S.C. § 1030(c)(4)(A)(i) by:

(i) Generating aggregated financial losses to Plaintiff's business and property vastly exceeding the $5,000.00 statutory floor;

(ii) Actively modifying, impairing, and blocking the clinical medical examination, diagnosis, treatment, and specialist care of Plaintiff under active claim **DWC No.** 25183607; and

(iii) Directly causing severe, life-threatening physical injury, specifically driving Plaintiff's advanced cardiac disease from a clinical **Stage 3 to Stage 4 Congestive Heart Failure.**

158. As a direct result of these statutory cyber-violations, Plaintiff has suffered immense, irreparable asset destruction and severe physical trauma. Plaintiff is entitled to compensatory damages, statutory sanctions, and an immediate emergency mandatory injunction under **Fed. R. Civ. P. 65** to restrain Defendants from further unauthorized data manipulation and to freeze all pending liquidation schedules, as well as suspense all access of defendants JB. and her co-conspirators to Plaintiff's claim file and medical Records.

V. ***COUNT # 5: FRAUD INVOLVING IDENTIFICATION MEANS / MEDICAL RECORD SPOOFING → 18 U.S.C. § 1028***

Against Jennifer Bradford & Co-conspirators

159. Plaintiff alerts the Court to an egregious, illegal data-manipulation maneuver utilized by the Enterprise to create a total administrative blockade. Defendants systematically accessed protected medical and insurance database servers to intentionally **alter, spoof, and misalign Plaintiff's true legal name** on her master medical records, (exhibit # 8)

160. Defendants stripped Plaintiff's true legal identity (**"Van Thi-Hanh Trinh"**) from critical clinical records and replaced it with a truncated, synthetic ghost profile name (**"Van Trinh"**) **(exhibit #** 8 **, page #** 2-4), while simultaneously attaching a **fraudulent, unauthorized secondary Social Security Number** to her internal claims profile under **DWC No. 25169058.** → This alteration constitutes an independent violation of **18 U.S.C. § 1028 (Fraud Involving Identification Means)** and served as a core predicate act under the broader Civil RICO framework.

161. **The Statute:** Pursuant to 18 U.S.C. § 1028A, it is a violation of federal law to knowingly transfer, possess, or use, without lawful authority, a means of identification of another person during and in relation to any specified felony violation, including mail fraud, wire fraud, and healthcare fraud.

162. **The Application:** Although § 1028A is a criminal statute, it is fully weaponized civilly herein as a core predicate act within the Plaintiff's Civil RICO framework. The Defendants knowingly used Plaintiff's core identifying information (her medical history, her clinical case files, DWC claim file and variations of her name) without authority to manufacture the "shadow" or "synthetic" identity profiles used to divert the $110,000.00 annual baseline assets. Defendants utilized this identity theft to conceal their financial diversion from state regulatory systems, making this statutory violation the central vehicle used to execute the broader wire, mail, and healthcare fraud scheme.

163. This identity spoofing was deployed as a weaponized filter: when Plaintiff attempted to access her primary care physician, specialists, or diagnostic cardiac laboratories, the electronic intake systems

flag the mismatched name and fraudulent SSN as a data conflict. This intentionally triggered an automated administrative rejection, leaving Plaintiff completely unable to receive life-sustaining treatment for her advanced heart illness.

164. Furthermore, by utilizing these protected database systems to inject fraudulent identifiers and synthetic identity parameters, Defendants actively **exceeded their authorized computational access in direct violation of 18 U.S.C. § 1030(a)(4) [CFAA]**. Defendants engineered this digital identity erasure to deny Plaintiff an administrative paper trail, evade state regulatory oversight, and accelerate her physical and financial attrition before the imminent **June 14, 2026** foreclosure deadline.

## VI. ***COUNT # 6: DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (18 U.S.C. § 242)***

165. This statute directly addresses the weaponization of a state-regulated system to strip a citizen of their constitutional and medical rights.

167. The **Standard:** Section 242 prohibits the willful deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States under color of any law, statute, ordinance, regulation, or custom. The statute notes that if bodily injury results from the acts committed, the violation escalates to a severe felony.

168. **Application to Plaintiff's Case:** The Defendants, acting in tandem and compounding with state insiders within the Texas Department of Insurance - Division of Workers' Compensation (TDI-DWC) and the Office of Injured Employee Counsel (OIEC), weaponized their administrative state-regulated authority. They utilized insider access to the state's "TXCOMP" system to systematically cut off life-sustaining cardiac care and a prescribed custom wheelchair, acting under the color of state Workers' Compensation regulatory systems. Documenting that forcing Plaintiff to crawl mechanically drove progressive myocardial tissue destruction, Left Atrial Enlargement, and organ degradation fits squarely into the definition of inflicting severe bodily injury during the deprivation of a citizen's statutory property and healthcare rights. This statutory violation supports the immediate invocation of this Court's inherent equitable power to issue a Temporary Restraining Order.

169. **The Element of Intent:** the enterprise utilized insider access to the state's "***TXCOMP***" system to systematically cut off life-sustaining cardiac care and a prescribed custom wheelchair, and PCP's cares, labs, (Section 242).

170. **The Felony Escalation:** Normally a misdemeanor, this charge automatically escalates to a 10 year felony or a life sentence if the deprivation results in bodily injury, or if the acts include , aggravated sexual abuse, or an attempt to kill. Documenting that forcing Plaintiff to crawl mechanically drove progressive myocardial tissue destruction fits squarely into the definition of inflicting severe bodily injury.

progressive myocardial tissue destruction fits squarely into the definition of inflicting severe bodily injury.

## VII. ***COUNT # 7: COMMON LAW FRAUD & SYNTHETIC IDENTITY DECEPTION → TEXAS COMMON LAW***

Down & Stanford P.C., LeeAnn Mask.

**Against Defendants Jennifer Bradford, and Vicky Bush, Plaintiff alleges and incorporates by reference all preceding paragraphs of this Petition as if fully set forth herein.**

171. Plaintiff possesses an absolute, vested property right and statutory entitlement to her Workers' Compensation indemnity benefits under her true identity profile (**DWC No. 25169058**).

172. Defendants intentionally and unlawfully assumed and exercised dominion, altered data control, and ownership over Plaintiff's benefits. They accomplished this by creating an artificial dual-claim architecture on the TXCOMP database, altering her name variations, and mapping a fraudulent, cloned Social Security Number to siphon her ~**$110,000.00** baseline salary assets into separate corporate accounts. This electronic diversion completely starved Plaintiff of her financial means, rendering her unable to pay basic household utilities or secure medical interventions.

173. Defendants' actions constitute common law fraud and conversion, which proximately caused immediate financial ruin, absolute destitution, and severe physical trauma to the Plaintiff. Defendants made material, false representations to state regulatory systems (the TDI-DWC's TXCOMP database) and national medical clearinghouses by claiming that:

- **(i)** Plaintiff's valid, high-value primary claim (**DWC No. 25169058**) was "obsoleted" (State Agent OIEC's Assistant Manager)
- **(ii)** Plaintiff's baseline ~$110,000.00 annual salary was governed by un-authorized & un-investigated Form DWC-003 wage statement completed behind Plaintiff's back.
- **(iii)** Plaintiff's true identity, linked to her government-issued 1990 Social Security Number X34-XX-7XX1, belonged to a **"DECEASED"** individual.
- **(iv)** There was an existence of a fraud second Social Security Number created in November 2023, without Plaintiff's consent.
- **(v)** Defendants knew these representations were false at the time they were made, or made them recklessly without any knowledge of the truth and as a positive assertion.
- **(vi)** Defendants intended for the public-facing administrative systems, healthcare networks, and Plaintiff to act upon these misrepresentations, so that the enterprise could quietly siphon the backend funds under the synthetic "Van Trinh" and fraud SSN ghost track while insulating themselves from regulatory audits.
- **(vii)** Plaintiff and the administrative clearinghouses relied upon this deceptive data environment,

resulting in the total cancellation of Plaintiff's custom power wheelchair, the suppression of her personal payments to her cardiologist (including the **$2,740.00 money order**), and her complete financial devastation.

## VIII. *COUNT # 8: VIOLATION OF TEXAS LABOR CODE § 408.021*

**Against Defendants Jennifer Bradford/ ESIS Inc. and ACE American Insurance Company**

174. Pursuant to **Texas Labor Code § 408.021(a)**, an employee who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury *as and when needed*. This statutory mandate is absolute, non-discretionary, and creates an enforceable property right in vital medical assistive apparatuses, especially Plaintiff was classified as an "indemnity" insurance type by carrier.

175. Defendants possess no lawful authority to countermand, delete, or obstruct a valid medical prescription issued by an independent primary care physician. By manually bypassing statutory paper notices, utilizing the fraudulent secondary claim shell (**DWC No. 25183607**) to issue bad-faith electronic denials, and physically withholding Plaintiff's approved custom **NuMotion Wheelchair (TiLiteAeroX with Motor SmartDrive)**, Defendants have directly violated the non-discretionary mandates of Texas Workers' Compensation law.

## IX. *COUNT # 9: HEALTHCARE FRAUD (18 U.S.C. § 1347): USING Plaintiff ADVANCED HEART FAILURE AND UTERINE HEMORRHAGING TO GENERATE MEDICAL BILLING PROFILES.*

176. Using Plaintiff's advanced heart failure and uterine hemorrhaging to generate medical billing profiles.

177. When Defendand Jennifer Bradford stepped in on ~April 9, 2026 to cancel the wheelchair, 18 U.S.C. § 1347 acts as a massive lever:

**The Predicate Act**: Healthcare fraud under § 1347 is a designated "**Predicate Act**" under the Racketeer Influenced and Corrupt Organizations Act. Every fraudulent electronic denial sent while a duplicate claim is siphoning money constitutes a distinct count of healthcare fraud and wire fraud.

**The Conspiracy Multiplier (18 U.S.C. § 1349)**: Because multiple actors worked in concert to reverse an already approved NuMotion mobility device, and force Plaintiff into a closed communication loop, this invoked the **Health Care Fraud Conspiracy Statute**. Under federal law, the penalty for conspiracy is exactly the same as the underlying fraud → meaning both actors face the same 20-year-to-life escalations if serious bodily injury or death occurs.

## X. *COUNT # 10: COMMON LAW CIVIL CONSPIRACY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

178. Defendants knowingly, willfully, and maliciously entered into an agreement to accomplish an unlawful purpose, and a lawful purpose through unlawful means: specifically, the conversion of

Plaintiff's $110,000.00 baseline Workers' Compensation salary benefits and the intentional blockade of life-sustaining medical equipment.

179. Furtherance of this conspiracy, Defendants executed overt acts, including denied PCP & cardiologist care, the manual database override commands executed on April 7 and April 9, 2026, which intercepted and force-canceled Plaintiff's electronically approved, medically prescribed custom wheelchair (NuMotion TiLiteAeroX with Motor SmartDrive ).

180. Defendants acted with full clinical notice and conscious disregard of Plaintiff's severe cardiovascular vulnerabilities, including Brady-Tachycardia Syndrome and Severe ST-Segment Elevation. Defendants knew that denying an immobile, disabled worker her wheelchair would force her to engage in strenuous physical attrition (crawling/ walking with crutch...), directly triggering irreversible myocardial tissue degradation and life-threatening heart failure acceleration.

181. The conduct of Defendants was extreme, outrageous, exceeded all bounds of human decency, and was executed as a lethal mechanism of physical and economic attrition to force the liquidation of Plaintiff's assets prior to judicial review.

182. As a direct and proximate result of Defendants' conspiratorial actions, Plaintiff has suffered permanent, irreversible biological collapse, severe physical pain, and profound emotional distress/trauma.

**(xi) *ETC. AND ETC...***

183. There're more cause of actions can be documented, however Plaintiff was kept being cyber bullied when doing research, and have been lost hours of good works due to RICO's ongoing abuses. Plaintiff was being strained at home due to the benefit blockage, and unable to freely go to the law libraries at this time.

## G. EXEMPTION FROM EXHAUSTION OF ADMINISTRATIVE REMEDIES VIA THE FUTILITY DOCTRINE

184. With the above-described, Plaintiff is exempt from any requirement to exhaust administrative remedies through the Texas Department of Insurance (TDI) or Division of Workers' Compensation (DWC) because any such attempt is entirely **futile**.

185. First, the administrative machinery is structurally compromised; Defendants have engineered a parallel data-split architecture within the "***TXCOMP***" system, routing Plaintiff's baseline entitlements to a pre-denied track and deploying AI voice-routing software to intercept and suppress her filings and agency communications. ( HHSC, Baker Ripley, Court house, Chase Bank, Doctor office, , IRS, Center Point Energy, TXU Energy, etc.).

186. Second, pursuit of administrative appeals is futile because the agency cannot provide an adequate

remedy, including ignored red flags and criminal matters within a timeframe necessary to preserve Plaintiff's life. Forced compliance with slow-moving administrative tracks while Plaintiff is actively suffering advanced heart failure and being forced to crawl without a wheelchair, walked with crutch, ... → creates imminent, irreversible biological destruction to her surviving heart anatomy. **Delayed monetary or administrative relief cannot repair dead myocardial tissue. Equity must intervene now to freeze progression of damages...**

## H. INCORPORATION OF EMERGENCY EX PARTE MOTION FOR TRO & APPLICATION OF THE ADMINISTRATIVE FUTILITY DOCTRINE

### *I. INCORPORATION OF CONCURRENT 55 -PAGE EMERGENCY MOTION FOR INJUNCTIVE RELIEF*

187. Concurrently with the filing of this Petition, Plaintiff has submitted a comprehensive, 47-page Emergency Ex Parte Motion for a Temporary Restraining Order (TRO) & Preliminary Injunction to Reinstate Stolen Indemnity Workers' Compensation Benefits under DWC No. 25169058. Plaintiff hereby incorporates that 55page motion, its supporting declarations, and its evidentiary exhibits by reference into this Petition as if fully set forth herein. As detailed extensively in that concurrent filing, Plaintiff has fully satisfied the strict traditional four-factor framework required for the immediate issuance of emergency equitable relief, demonstrating an uncontradicted likelihood of success on the merits and a daily, active threat to her physical survival.

### *II. SATISFACTION OF THE FEDERAL FUTILITY DOCTRINE TO BYPASS STATE ADMINISTRATIVE EXHAUSTION*

188. Plaintiff explicitly pleads that Plaintiff is legally exempted from any requirement to further exhaust state administrative remedies under the federal **Futility Doctrine.** The Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) and the Office of Injured Employee Counsel (OIEC) have proven structurally incapable of providing timely, adequate relief. State administrative channels are actively gridlocked, paralyzed by the internal exploitation of the TXCOMP database, and unable to address multi-state synthetic identity fraud. Requiring Plaintiff to remain within those broken channels for about 14 months while facing irreversible biological collapse constitutes a denial of due process. This administrative bypass is fully supported by controlling Supreme Court precedent:

- **McCarthy v. Madigan, 503 U.S. 140 (1992):** The United States Supreme Court ruled that a plaintiff is not required to exhaust administrative remedies when the administrative body is

structurally biased, when the agency lacks the authority to grant the necessary or complete relief, or where advanced, irreversible medical injury will occur during the institutional delay.

- **Honig v. Doe, 484 U.S. 305 (1988):** The United States Supreme Court explicitly established that the exhaustion of administrative processes is entirely waived when a plaintiff demonstrates that pursuing those channels would be futile or completely inadequate to protect their immediate safety and constitutional rights.

189. Plaintiff satisfies both thresholds: the TDI-DWC cannot order the Social Security Administration to fix the fraudulent 2nd SSN creation, and a fraudulent "deceased" flag, nor can it stop an imminent upcoming home foreclosure. Furthermore, forcing a permanently disabled worker with terminal heart failure to endure multi-year administrative delays while being denied a medically prescribed wheelchair causes immediate, irreversible myocardial tissue degradation. Pursuing further state administrative remedies is completely futile, legally inadequate, and excused as a matter of law.

## I. REQUEST TO UNSEAL PETITION AND FILINGS

190. Plaintiff requests that this Petition and all prior related filings be unsealed. There is a strong presumption of public access to judicial records. Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr., 913 F.3d 443, 450 (5th Cir. 2019). Sealing requires compelling reasons and narrow tailoring after balancing against the public's common-law right of access; it must be exercised "charily." Holy Land Found., 624 F.3d at 690–91. No such reasons exist here.

191. Any prior sealing appears arbitrary and the result of alleged interference, depriving the public of scrutiny over serious matters of "DEEP INSURANCE FRAUD"/ SYNTHETIC IDENTITY FRAUD, especially the matters representing a mandatory request for reinstating Plaintiff's STOLEN **"INDEMNITY"** Workers' Compensation benefits—predicated on Plaintiff's true **~$110,000.00** annual baseline salary— to its full lawful scope under her original, legitimate, and valid active claim, **DWC No. 25169058**, that has been stolen → **unlawfully stripped away from Plaintiff for over seventeen (17) months by Defendants: Jennifer Bradford, Vicky Bush** and their co-conspirators, in compounding with ACE American Insurance Company ("ACE"), OIEC and TDI-DWC insiders → leading to Plaintiff's heart failure progress to advance stage, started to damaging other organ → was willfully as conscious and reckless support their evil motives, support the enterprise. Unsealing serves the public interest without harming legitimate privacy concerns. Plaintiff respectfully moves this Court to unseal the petition, motion as well as all exhibits, along with all other documents and pleadings filed in this proceeding.

**STRONG PRESUMPTION OF PUBLIC ACCESS TO JUDICIAL RECORD**

192. The Fifth Circuit recognizes a strong common-law right of public access to judicial records. Binh Hoa Le v. Exeter Fin. Corp., 990 F.3d 410, 416 (5th Cir. 2021) ("Judicial records are public records."); accord Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597–98 (1978). This right "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." United States v. Sealed Search Warrants, 868 F.3d 385, 395 (5th Cir. 2017) (quoted in Bradley v. United States, 954 F.3d 223, 224 (5th Cir. 2020)).

193. Sealing is therefore "heavily disfavored" and "should be the exception, not the rule." Le, 990 F.3d at 418; see also BP Expl. & Prod., Inc. v. Claimant ID 100246928, 920 F.3d 209, 210 (5th Cir. 2019); June Med. Servs., L.L.C. v. Phillips, 22 F.4th 512, 519 (5th Cir. 2022). To overcome the presumption of openness, the Court must conduct a "case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." Le, 990 F.3d at 419 (cleaned up). Generalized concerns—such as embarrassment, confidentiality designations, or party agreement—are insufficient to justify sealing. Id.; Holy Land Found. for Relief & Dev., 624 F.3d 685, 690 (5th Cir. 2010) (the power to seal must be exercised "sparingly").

**NO COMPELLING INTEREST JUSTIFIES CONTINUED SEALING**

194. No compelling interest supports continued sealing of Plaintiff's filings. **This matter involves serious crimes of DEEP INSURANCE FRAUD & DEFERAUDING THE STATE'S ELECTRONIC SYSTEM, KNOW AS "*TXCOMP*",** that TDI- Division of Workers' Compensation has been using to manage the Workers' Compensation Claims for injured employees across the state of Texas, a RICO enterprise impersonate insurance carrier, ACE American Insurance Company/ CHUBB enterprise, weaponizing a manufactured asset stripping / upcoming forclosure on Plaintiff's homestead → to finalize the liquidation of her assets, "DEEP FRAUD", and repeated abuses the "***shadow***" of a Third Party Claim Administrator, "ESIS", fraudulently run by Defendant Jennifer Bradford, acted as "***Claim Adjuster***", while she was not Plaintiff's real Claim Adjuster, and "***shadow***" insurance carrier of ACE was siphon named as, "***ACE American Insurance Co.***" litigant who faces significant language barriers, lacking knowledge in the laws, chronic injured leg, and advanced-stage Congestive Heart Failure. These claims directly implicate the integrity of federal and state procedures, the administration of justice in the TDI-Div. Workers' Compensation and the public's interest in preventing the potentially fraudulent loss of a Texas homestead.

run by Down & Stanford P.C., in compounding with insiders of: office Injured Employee Counsel & TX Department of Insurance-Division of Workers' Compensation; a multi billion dollars insurance carrier, "ACE" American insurance / CHUBB; a 500 Fortune multi-billion dollars company of Cognizant--Medicall directed at a Pro-Se

195. The public has a legitimate and substantial interest in scrutinizing these allegations transitioned into criminals invoked numerous federal offenses, in relation to RICO ACT & FTCA—especially where they involve a large insurance carrier, and claims that curt processes have been weaponized to liquidate Plaintiff's assets and survivals. Which has been support RICO's fraud schemes on conducting a massive financial fraud scheme to stealing Plaintiff's benefits, and homestead, through "**DEEP FRAUD" Context: Identity Liquidation / Synthetic Identity Fraud and Internal Exploitation of the state's electronic system, TXCOMP**. Whereas, these acts were also intrinsically linked to a broader criminal conspiracy involving **Biometric Racketeering**, RICO violations, and the felonious use of Plaintiff as a non-consensual human experimentation (Case No. 25-20505), and is also an urgent matter to rectify the illicit seizures of Plaintiff's property equity of ~$650,000.00, in the light of Plaintiff's advance heart failure, especially involved JP Morgan Chase Bank N.A. (Plaintiff's mortgage lender) (Civil Action: 25-20452/ 4:24-cv-01230, *see Roadmap for Interconnected Litigations*) . **Whereas these matters should be promote full public accountability and transparency.**

196. Any prior sealing order (if one was entered) appears to have been precautionary, prompted by sensitive medical information and RICO-related details. Those circumstances have materially changed. **Plaintiff now confronts imminent, life-threatening harm of some advance Congestive Heart Failure remains untreated as of present, due to RICO's ongoing medically abuses; blocking Plaintiff from obtain true medical services → Plaintiff has voluntarily disclosed specific medical facts, and related conditions/ information, to seeking for a chance of public's understanding and assistance, to assist Plaintiff to recoup her well-beings.**

197. Unsealing such typical RICO's abuses are **solely to demonstrate the abusive natures of RICO-associated actors, emergency nature of the requested relief and the absence of adequate alternative remedies** under Cheney v. United States District Court, 542 U.S. 367 (2004). **Plaintiff expressly waives any personal privacy interest in those medical details, as well as the financial details to promote full public accountability and transparency.**

198. No trade secrets, third-party privacy rights, national-security concerns, or other overriding interests are present. Even if minimal redactions were warranted for isolated non-public identifiers (which Plaintiff does not concede), **full unsealing remains the least restrictive means of vindicating the public's right of access.** See Le, 990 F.3d at 419 (courts must consider less-restrictive alternatives before sealing).

199. Unsealing the record will advance the fundamental values underlying the presumption of openness: transparency, judicial integrity, and public confidence in the federal courts. **Plaintiff therefore respectfully requests that the Court unseal the entire record in this petition, motion .**

## I. CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE,** , PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be cited to appear and answer herein, and that this Court grant Plaintiff the following extraordinary and permanent relief:

200. An **Emergency Temporary Restraining Order and mandatory Preliminary Injunction** enjoining Defendants from aggravating Plaintiff's identity theft/ Synthetic Identity, defrauding Plaintiff's INDEMNITY Workers' Compensation Benefit, freezing the synthetic backend track, suspend all fraudulent accesses to Plaintiff's claim files, medical records, and benefits from these Dependents: Jennifer Bradford, Vicky Bush, law firms, attorneys, and agency insiders and ordering the **(a)** immediately reinstate all weekly cash indemnity benefits retroactive to their inception; **(b)** authorize and deliver her medically prescribed **NuMotion Custom Wheelchair** (TiLiteAeroX with Motor SmartDrive); and **(c)** lift all fraudulent administrative database blockades currently targeting Plaintiff's primary care, diagnostic laboratory testing, specialist cardiac care .

201. An Order finding Defendants jointly and severally liable for **Civil RICO Violations,** awarding treble damages on all converted indemnity funds based on her ~**$110,000.00** true annual salary baseline.

202. Actual, compensatory, and punitive damages for Common Law Fraud, Conversion, and the intentional imposition of Serious Bodily Injury.

203. Statutory costs, fees, and any such other and further relief, both at law and in equity, to which Plaintiff may show herself justly entitled.

Respectfully Submitted,

[signature]

**--Van Thi-Hanh Trinh,**
*Pro Se*, Plaintiff
16903 Himley Drive
Cypress, TX 77433

July 1, 2026 @ 4:59 A.M.
**Date & Time Signed**

## J. SWORN AFFIDAVIT & UNDER PENALTY OF PERJURY

I, **Van Thi-Hanh Trinh**, a female, a United State Citizen, resident of Texas, resided at my homestead:16903 Himley Drive, Cypress, TX 77433, solemnly declare, affirm, sworn, and **UNDER PENALTY OF PERJURY** that the foregoing statements and facts are true and correct to the best of my knowledge and experiences. I make this declaration consciously, fully aware that it has the same force and effect as a **Sworn Affidavit** or statement made under oath. Any knowingly false statement contained herein may subject me to the **PENALTIES FOR PERJURY UNDER GOD AND THE LAWS.**

In further support of the truthfulness of my statements, I note that I have previously provided SWORN AFFIDAVITS and affirmations in connections to the case/ intrinsically linked causes. Specifically, on September 1, 2021, I appeared in person before three agents of the Texas Department of Public Safety (DPS)'s Criminal Investigation Division at their Region 2 Headquarters, Houston, TX. There, with my hand raised in tears, I swore an oath before God that if any of the facts I reported to them were fabricated, I would die **INSTANTLY** in a car accident while driving home from their office (approximately 30 minutes driving).

Additionally, on June 2025, I was once again taken a serious oath to supporting my motion filed at U.S. District Court, requested to reopen & reinstate due to extended discoveries on my cases: 4:24-cv-01230 (against Chase Bank) & 4:24-cv-01231 (against RICO actors, including my next door neighbor, Mr. Ezzy H. Yusuf, etc.). About a week later, RICO enterprise arranged for me being struck by 18-Wheelers three (3) attempts on: June 17th, 18th, and 22nd. Subsequently, on July 30, 2025 Defendant Ezzy Yusuf drove his truck and tried to struck me on Himley Drive... As of today, July 1, 2026, I remain alive and thrive, which I regard as confirmation of the veracity of those statements, → **A TESTIMONY TO THE TRUTH OF MY STATEMENTS TO GOD & EVERYONE.** Additionally, if any facts I have reported/documented within any of my cases are determined to be fabricated, **I willingly submit that I deserve the most SEVERE PUNISHMENT the U.S. Government may lawfully impose, including execution by Electric Chair.** I declare **UNDER PENALTY OF PERJURY** that the foregoing is true and correct to the best of my knowledge.

[signature] — July 1, 2026 04:01 p.m

**Affiant's Signature – VAN THI-HANH TRINH** **Date & Time Signed**
Mailing Address: 16903 Himley Drive. * Cypress, TX 77433 * [ NO PHONE & NO EMAIL]

## NOTARY ACKNOWLEDGMENT

**STATE OF** Texas **COUNTY OF** Harris. Before me, the undersigned authority, on this day personally appeared Van Thi Hanh Trinh, proved to me through her Driver License (type of ID), and SSN: **X34-1X-7XX1** on the oath of to be the person whose name is subscribed to the foregoing instrument, & acknowledged to me that she executed the same for the purposes and consideration therein expressed.

**GIVEN UNDER MY HAND AND SEAL** of office this 1st day of July, 2026.

Roberto Fagundo
**Notary's Printed Name**

[signature]
**Notary Public Signature**

ROBERTO FAGUNDO
133439910
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
NOVEMBER 9, 2029